2015 WY 64

**Ryan John WALDRON, Appellant (Defendant),**

v.

**Anndee Mae WALDRON, n/k/a Anndee Mae Hamilton–Cooper, Appellee (Plaintiff).**

No. S–14–0230.

Supreme Court of Wyoming.

May 1, 2015.

Representing Appellant: Michael Stulken, Attorney at Law, Green River, Wyoming.

Representing Appellee: Eric Phillips, Attorney at Law, Rock Springs, Wyoming.

Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.

DAVIS, Justice.

[¶ 1] Approximately six years after their divorce, Appellant Ryan Waldron (Father) and his ex-wife (Mother) filed separate proceedings relating to their child in Wyoming and Pennsylvania. Mother sought to terminate Father's parental rights with respect to their seven-year-old son, and Father asked the Wyoming court to instead enter orders to facilitate the exercise of his visitation rights. The district court in Sweetwater County declined to exercise jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[1] Father objected to the district court's order, and the court

---

1. Wyo. Stat. Ann. §§ 20–5–201 through 20–5–502 (LexisNexis 2013).

denied his objection more than two months later. Thereafter, Father filed a notice of appeal from the order ruling on the objection.

[¶ 2] Father's objection was in substance a motion to reconsider the order declining to exercise jurisdiction. Such a motion does not toll the time for taking an appeal. Because the only notice of appeal Father filed was untimely, we must dismiss.

## FACTS

[¶ 3] Father and Mother divorced in May of 2007 when their son was approximately seven months old. Mother was granted primary physical custody of the child, and Father was awarded visitation. On October 29, 2010, the district court issued an order limiting him to supervised visitation at the Sweetwater County Family Resource Center. Apparently that order resulted from Father's physical abuse of his second wife while these parties' child was present, and the boy's resulting traumatization and need for counseling.

[¶ 4] Mother also remarried, and sometime late in the spring of 2011, she, the parties' son, and her new husband moved to Pennsylvania. Father also moved to Natrona County from Sweetwater County. Mother ultimately filed an action seeking to terminate his parental rights in Pennsylvania, evidently anticipating that her new husband would adopt the child if that relief was granted.

[¶ 5] On November 1, 2013, Father filed a "Verified Motion for Contempt and Motion to Cause Visitation to Progress" in the district court in Sweetwater County. He acknowledged that Mother had commenced termination proceedings in Pennsylvania, and that a hearing had been scheduled in that case. However, he also asserted that Mother had frustrated his efforts to exercise visitation with their son, and that she was using his lack of contact with the child against him in the termination case. Father claimed that Mother's conduct violated previous court orders, and he asked that she be held in contempt, and that the court establish a new visitation schedule.

[¶ 6] Mother responded to those motions on January 3, 2014, denying that she had interfered with Father's exercise of his visitation rights. She pointed out that he was required to make arrangements with the Sweetwater County Family Resource Center to supervise visitation with their son, but that he had done so only once since her move to Pennsylvania, and that she had transported the boy to Wyoming for that purpose on that one occasion. Mother also noted that Father initiated only a few contacts of any kind with the child since the move, and that he quit paying child support at the end of October 2012. She contended that he filed his motions in Wyoming in response to the termination proceedings in which he had already appeared in Pennsylvania, and she asked the district court to reject his request to hold her in contempt. Perhaps more pertinent to the present appeal, Mother also asked the court to hold Father's motions in abeyance so that the court in Pennsylvania could rule on her request to terminate his parental rights.

[¶ 7] On March 12, 2014, the judge presiding over the Pennsylvania termination action telephoned the district judge in Wyoming to discuss which forum should exercise jurisdiction over the matters before them under the UCCJEA.[2] It became clear dur-

---

2. The UCCJEA defines "child custody proceeding" broadly to include "a proceeding in which legal custody, physical custody or visitation with respect to a child is an issue, including a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights or protection from domestic violence in which the issue may appear." Wyo. Stat. Ann. § 20-5-202(a)(iv). The termination action and the motions filed by Father were therefore both child custody proceedings, and the two courts had to determine, after conferring, which forum was more expedient. Wyo. Stat. Ann. § 20-5-210 (courts may communicate concerning proceedings under the UCCJEA); § 20-5-307(a) (a court of this state may decline jurisdiction if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum). Before making that decision, a Wyoming court is required to "allow the parties to submit information," after which it must consider all "relevant factors," including those identified by the statute. Wyo. Stat. Ann. § 20-5-307(b). Father complains that he was not given this opportunity before the forum decision was made.

ing that discussion that the parties' son had lived in Pennsylvania for well over two years, that Father had engaged counsel to represent him in Pennsylvania, and that he would have the opportunity—as part of the termination proceedings—to litigate the issues raised by the motions he filed in Wyoming.

[¶ 8] Six days later, without holding a hearing, the district judge in Sweetwater County issued an order declining to exercise jurisdiction, in which she briefly summarized her conversation with her eastern counterpart. The court determined that Pennsylvania was a more convenient and appropriate place for the parties to litigate all issues and ceded jurisdiction to the court presiding over the termination proceedings in that state.[3]

[¶ 9] Father did not appeal from the March 18, 2014 order. Instead, he filed a pleading entitled "Defendant's Objection to Order Declining Jurisdiction and Request for Hearing Regarding Jurisdiction" a week later. Despite the fact that he had filed a motion to dismiss[4] the Pennsylvania termination case, Father claimed that he was unaware that the Wyoming court would need to decide whether it should exercise jurisdiction over his motions until the March 18 order was issued.[5] Although he alleged the district

court deprived him of notice and an opportunity to be heard on the jurisdictional question as he argues is required under Wyo. Stat. Ann. § 20–5–307(b), his objection and request for hearing only touched legal issues as to the notice and opportunity to be heard required by the UCCJEA. Nowhere did he identify evidence that might have justified the Wyoming court in exercising jurisdiction if it had notified him of its inclination to decline jurisdiction and granted him a hearing on that question.[6] He also suggested that the court's exclusive continuing jurisdiction under Wyo. Stat. Ann. § 20–5–302 precluded it from resorting to the *forum non conveniens* provisions of Wyo. Stat. Ann. § 20–5–307 and, thus, from declining to exercise that jurisdiction.[7]

[¶ 10] What little can be gleaned from the record indicates that Father took the same approach during the April 11, 2014 hearing on his objection.[8] On May 30, the district court entered an "Order Denying Defendant's Objection to Order Declining Jurisdiction and Request for Hearing Regarding Jurisdiction and Order Declining Jurisdiction." Father filed a notice of appeal from that order on June 26, 2014, well over three

---

3. A court's decision to exercise its continuing jurisdiction over such matters, or to allow the courts of another state to exercise jurisdiction under circumstances like those present in this case, is reviewed for an abuse of discretion. *Symington v. Symington*, 2007 WY 154, ¶ 7, 167 P.3d 658, 659 (Wyo.2007).

4. The record does not indicate whether that motion rested on a jurisdictional issue or some other basis.

5. He does not explain how he could have continued to be unaware of the jurisdictional issue after Mother asked the district court to dismiss the motions and refrain from further action in the case until the Pennsylvania court disposed of the termination case in her January 3, 2014 response to his motions.

6. We note that the relevant statutes require a Wyoming court to convey to the parties the substance of its communication with a court in another state, and to allow the parties to submit information regarding which might be the more convenient forum. Wyo. Stat. Ann. §§ 20–5–210 and 307; *see also* Linda D. Elrod, *Child Custody Practice and Procedure* § 17:9 (database updated 2014). However, those statutes do not mandate

a hearing. Elrod, *supra*, § 3:32; *Mikesell v. Waterman*, 197 P.3d 184, 187 (Alaska 2008) (appellant must identify contested facts material to the inconvenient forum issue that, due to the lack of a hearing, he could not put before the trial court).

7. As already noted, § 20–5–307 empowers all Wyoming courts having jurisdiction to make a child custody determination to decline to exercise its jurisdiction. Its plain terms do not withhold that power from courts having exclusive continuing jurisdiction under § 20–5–302. In this case, the child had lived in Pennsylvania for over two years, and his current teachers, medical care providers, and counselors (if he had any) were located there, offering a sound reason for a state in which the child had not resided for two years to decline jurisdiction.

8. That hearing was not reported, and the only accounts of what took place there are contained in the district court's order of May 30, 2014, denying Father's objection and request for a hearing on jurisdictional issues, and the court's September 9, 2014 "Order Approving W.R.A.P. 3.03 Statement of the Evidence as Modified by the Court."

months after the court's entry of its original "Order Declining Jurisdiction."

## DISCUSSION

[¶ 11] This Court has a duty to determine whether it has jurisdiction to entertain an appeal even if no party has raised that question. We pursue that inquiry de novo because the limits placed upon the exercise of our appellate powers are matters of law. *In re Estate of Nielsen,* 2011 WY 71, ¶ 11, 252 P.3d 958, 961 (Wyo.2011). One of those constraints derives from the rule that we may entertain appeals only from judgments or appealable orders with respect to which an appellant has filed a notice of appeal within thirty days from the entry of that judgment or order. *Id.;* W.R.A.P. 1.03 (timely filing of notice of appeal is jurisdictional); W.R.A.P. 1.04 (the types of decisions we may review on direct appeal); W.R.A.P. 2.01 (setting thirty-day limit). *See also Capshaw v. Osbon,* 2008 WY 95, ¶ 11, 190 P.3d 156, 158 (Wyo.2008) (the filing of a timely notice of appeal is jurisdictional, and we will not consider appellate argument or issues arising from an untimely notice of appeal).

[¶ 12] In civil cases such as this one, the time to appeal is tolled if a litigant files a timely W.R.C.P. 50(b) motion for judgment as a matter of law, a Rule 52(b) motion to amend or make additional findings of fact, a Rule 59 motion to alter or amend a judgment, or a motion for a new trial under that same rule. W.R.A.P. 2.02. The thirty-day limit is not, however, tolled by a motion whose title or content indicates that the filing party only wants the district court to reconsider a previously-entered judgment or appealable order.

[¶ 13] When a post-judgment motion is not expressly denominated as a request for reconsideration, this Court will evaluate its substance to determine what effect it may have on appellate deadlines. *Nielsen,* ¶ 12, 252 P.2d at 961.[9] We originally held that pleadings which by title or substance are

motions for reconsideration are treated as nullities, and that orders ruling on them are void and cannot be the subject of an appeal. *Plymale v. Donnelly,* 2006 WY 3, ¶¶ 1, 10, 125 P.3d 1022, 1023, 1025 (Wyo.2006). We later modified that rule to recognize the validity of prejudgment motions to reconsider, noting that:

> This Court concludes that the rule of *Plymale* should not be extended to prejudgment motions to reconsider. First, the concerns with respect to appeals, as expressed in *Plymale,* are not present with pre-judgment motions to reconsider. Second, this Court finds that recognizing such motions is consistent with a district court's traditional authority to revise its rulings prior to final judgment. *See Broadhead v. Broadhead,* 737 P.2d 731, 733 (Wyo.1987) ("[I]f a trial court in exercise of its discretion may modify tentative decisions until entry of the final order, it does not err in rendering a decree with changed provisions."). Therefore, this Court holds that pre-judgment motions to reconsider, whether denominated as such or not, are valid in Wyoming.

*Steranko v. Dunks,* 2009 WY 9, ¶ 6, 199 P.3d 1096, 1096–97 (Wyo.2009).

[¶ 14] The order declining jurisdiction and ceding it to the Pennsylvania court left the Wyoming court with nothing to decide:

> We have held that an appealable order under Rule 1.05(a) has "three necessary characteristics.... It must affect a substantial right, determine the merits of the controversy, and resolve all outstanding issues." *In re E.R.C.K.,* 2013 WY 160, ¶ 28, 314 P.3d 1170, 1176 (Wyo.2013) (quoting *In re KRA,* 2004 WY 18, ¶ 10, 85 P.3d 432, 436 (Wyo.2004)). Whether an order is final and appealable is a question of law, which we decide de novo without deference to the trial court's determinations. *Bourke v. Grey Wolf Drilling Co., LP,* 2013 WY 93, ¶ 15, 305 P.3d 1164, 1167 (Wyo.2013)

---

9. In this regard *Nielsen* departed somewhat from *Plymale v. Donnelly,* 2006 WY 3, ¶¶ 8, 9, 125 P.3d 1022, 1024–25 (Wyo.2006), where this Court warned we would not expend needless effort and resources to determine with what civil procedur-

al rule a particular post-judgment motion can be equated, and that we will instead require parties to adhere to those rules and identify such motions as one authorized by those rules.

(citing *In re MN,* 2007 WY 189, ¶ 4, 171 P.3d 1077, 1080 (Wyo.2007)).

*Estate of Dahlke ex rel. Jubie v. Dahlke,* 2014 WY 29, ¶ 31, 319 P.3d 116, 124 (Wyo. 2014). That order was therefore appealable.

[¶ 15] One week after the district court entered the March 18, 2014 order declining to exercise jurisdiction over Father's motions to hold Mother in contempt and to resume visitation with their son, Father filed a pleading that was not characterized as a motion of any kind—he called it an objection. Still, as we have already said, the Court must look to the substance of the objection to determine what it really is.

[¶ 16] If it is functionally the same as one of the four motions addressed in W.R.A.P. 2.02(a), Rule 2.02(b) tolled the time for appealing the March 18 order until thirty days after the district court's May 30, 2014 order denying his objection. However, if it is instead in reality a motion for reconsideration, Father's time for taking an appeal expired thirty days after entry of the March 18 order.

[¶ 17] The first of the tolling motions addressed by W.R.A.P. 2.02(a) is one under W.R.C.P. 50(b). Rule 50 addresses nothing more than motions for a judgment as a matter of law [10] in jury trials, and Rule 50(b) concerns the renewal of such motions after a judgment is issued on a jury verdict. *See Chopping v. First Nat'l Bank of Lander,* 419 P.2d 710, 716 (Wyo.1966) (the rendition of a jury verdict is an essential prerequisite to a motion under W.R.C.P. 50(b)). Father's March 25, 2014 objection cannot be deemed a Rule 50(b) motion because there was no jury trial in this case.

[¶ 18] The second motion that will toll the time for filing a notice of appeal is that described in W.R.C.P. 52(b). Such motions ask the district court, after entering a judgment, to amend or make additions to any special findings of fact the court may have made in support of its judgment. Even if the rule applied to this situation, which is questionable, Father made no such request

in his objection. As already noted, the objection touched upon only legal issues relating to whether the UCCJEA required him to be given notice and an opportunity to be heard before jurisdiction was ceded to the Pennsylvania court, and whether the Wyoming court's exclusive, continuing jurisdiction precluded it from declining to exercise that jurisdiction. Therefore, the objection cannot be characterized as a Rule 52(b) motion in disguise.

[¶ 19] Nor can the objection be characterized as a motion for a new trial under W.R.C.P. 59. That rule presupposes that the district court has conducted a trial and sets out the accepted grounds for such a motion, all of which pertain to irregularities in the trial proceedings or errors committed at trial. Thus, where an appealable order or judgment is issued without a trial, a motion for a new trial is an inappropriate means for seeking relief from that order of judgment. *Nielsen,* ¶ 13, 252 P.3d at 961–62. Because there was no trial, the district court could not properly have entertained such a motion following its order declining jurisdiction, and there is no basis to conclude that the objection to that order was in reality a motion for a new trial which tolled the time to appeal.

[¶ 20] Finally, whether Father's objection could be treated as a Rule 59(e) motion to alter or amend a judgment depends on its content. It cannot be unless it is based on legal issues derived from an intervening change of controlling law, factual issues arising from newly discovered evidence that was not previously available, or arguments which could not have been put before the district court prior to its ruling. No matter what it purported to be, it is not a proper Rule 59(e) motion if it amounts to an attempt to address factual or legal issues that should have been addressed earlier or that were already addressed and decided. *Id.,* ¶¶ 14, 17, 252 P.3d at 962; *In re Guardianship of Lankford,* 2013 WY 65, ¶ 27, 301 P.3d 1092, 1100–01 (Wyo.2013); *Sherman v. Rose,* 943 P.2d 719, 721 (Wyo.1997), *overruled on other grounds*

---

**10.** Such motions challenge the sufficiency of the evidence to support a verdict in favor of the non-

moving party. W.R.C.P. 50(a)(1).

by *Plymale v. Donnelly*, 2006 WY 3, 125 P.3d 1022 (Wyo.2006).

[¶ 21]    Father's objection did not allege an intervening change in the law governing the court's decision to decline to exercise jurisdiction, nor did it allege the discovery of new evidence pertinent to that decision. Furthermore, Father did not explain why he failed to respond to Mother's request that the court deny or refrain from taking any action on his motions until the Pennsylvania court decided whether to terminate his parental rights or not.    Mother asked the court, in effect, to cede jurisdiction, because allowing the Pennsylvania court to terminate Father's parental rights would make any issues regarding visitation moot because he would have no right to visitation.

[¶ 22]    Father could have replied to Mother's response to his motion within fifteen days after it was served.   W.R.C.P. 6(c)(1). That would have afforded him an opportunity to address Mother's claim that, in substance, the Sweetwater County District Court should defer to the Pennsylvania court.   He could also have requested a hearing to present evidence.   Instead two and a half months passed without a response to Mother's request that the Wyoming court decline to act before the court did in fact decline to do so. The objection did not therefore present arguments that could not have been put before the district court prior to its ruling declining jurisdiction.   For these reasons, we cannot view the objection as a motion under W.R.C.P. 59(e).

[¶ 23]    The objection was nothing more than a motion for reconsideration, and it did not therefore toll the time for filing an appeal from the district court's order declining jurisdiction.   Father filed no notice of appeal until more than three months after the district court entered its order, more than two months after the thirty-day deadline.   We can understand his frustration at the fact that the court entered the order without giving him an opportunity to be heard, and if a timely notice of appeal to that decision had been filed, we might have addressed the propriety of that decision, even though he failed to timely respond to the motion.   Because the notice of appeal was untimely, we cannot do so.

## CONCLUSION

[¶ 24]    Father's failure to timely perfect an appeal from the district court's "Order Declining Jurisdiction" prevents him from invoking the appellate jurisdiction of this Court.    Consequently, his appeal is dismissed.