BOOMGAARDEN, Justice.
[¶1] After learning of Mother's intent to move from Buffalo, Wyoming, to Plains, Montana (a distance of nearly 600 miles), Father, Luke Camino, petitioned to modify custody and requested primary physical custody of the parties' four-year-old son, BDC. Mother, MonteReye Ianelli (n/k/a MonteReye Josephson), opposed a change in custody, but counterclaimed to modify Father's visitation schedule. After a one-day trial, the district court found that Mother's move constituted a material change in circumstances, and that it was in BDC's best interests to grant Father primary physical custody. Mother appealed and we reverse and remand.
ISSUES
[¶2] We reframe Mother's issues:
1. Did the district court abuse its discretion when it determined a material change in circumstances justified reopening its prior custody order?
2. Did the district court abuse its discretion when it determined that transferring custody to Father was in BDC's best interests?
[¶3] Father raises a threshold jurisdictional issue asserting that Mother failed to timely file her notice of appeal.
FACTS
[¶4] Mother and Father were never married, but had a child together, BDC, who was born in February 2013. Shortly after BDC's birth, Father filed a petition to establish paternity, custody, visitation, and support. The parties reached an agreement a few months later and the district court entered a stipulated order on August 13, 2013. The district court ordered joint legal custody and named Mother as BDC's primary physical custodian. The district court also ordered a graduated visitation schedule for Father, which began with supervised visits. Although both parties resided in Buffalo, Wyoming, the order included an alternative visitation schedule in the event either party relocated more than 250 miles from Buffalo.
[¶5] Following entry of the custody order, BDC lived in Buffalo with Mother and his older half-sister, K. Mother owned her home and continued to work as a waitress for a local restaurant, as she had for approximately 16 years. Her mother also lived in Buffalo and provided childcare while Mother worked.
[¶6] Father initially worked as a fencer and lived just outside of Buffalo. He later married. His wife has a daughter from another relationship, R, who is six months older than BDC. In 2014, Father moved his family into their own home on his mother's ranch near Clearmont, Wyoming-roughly thirty minutes from Buffalo. Father switched employment a year later and worked in water management until his brother-in-law offered him a job with a cattle operation in March 2016.
[¶7] The parties largely adhered to the visitation schedule set forth in the custody order.[1] Father regularly exercised his visitation and the parties worked together to accommodate occasional schedule changes. During Father's visitation, BDC went to work with Father while Father did ranch *64 work. In the summer months, BDC participated in rodeos and in the Johnson County Fair with his cousins. He rode horses, fished, hunted, and spent time with his large extended family during his visits.
[¶8] In August 2016, Mother decided to move to Montana in early 2017 to be with her fiancé. She informed Father of her relocation plans and the parties discussed adjusting Father's visitation schedule. Father did not approve of the move because BDC had lots of friends and family in Buffalo. A few weeks later, Mother filed a notice of her intent to relocate.[2] Father retained an attorney in November and, on January 26, 2017, he filed a petition to modify custody and a motion for an ex-parte temporary restraining order. The district court did not enter a restraining order and Mother moved to Montana on February 1, 2017, as planned. Mother answered the petition and counterclaimed to modify visitation and child support. The district court set trial for August.
[¶9] After Mother relocated to Montana, she obtained employment as a waitress at a local resort; she worked Thursday through Sunday evenings from 5:00 p.m. to 9:00 p.m. While Mother worked, her husband or their eighteen-year-old niece provided childcare.[3] Mother also enrolled BDC in preschool on Mondays and Wednesdays from 12:00 p.m. to 3:00 p.m.
[¶10] The parties attempted to adhere to the alternative visitation schedule, but both parents were concerned about the amount of time BDC spent traveling between the households.[4] The parties tried to negotiate a new schedule. Father proposed that BDC stay for "four days instead of just like the weekend, or maybe every other week[,]" but Mother declined due to BDC's preschool schedule. Mother filed a motion to modify visitation in March requesting the court set a new visitation schedule pending trial. The district court held a hearing on the motion in May and issued a temporary order granting Father summer visitation from May 26, 2017, until three days before school commenced, subject to Mother's visitation on June 8-11, July 1-4, and August 4-7.
[¶11] By the time Father's summer visitation commenced, Mother was pregnant and developed complications with her pregnancy. Due to her condition and her husband's busy work schedule, Mother went to Buffalo on June 1, 2017, to stay with her mother for the summer.[5] Mother resumed her former waitressing job, but planned to return to the resort in Montana after her maternity leave expired. Her mother also planned to move to Montana to be with Mother and her family. While in Buffalo, Mother exercised her four days a month summer visitation and watched BDC participate in his weekly rodeo activities. She requested three additional visits. Father denied her requests, except he allowed Mother to take BDC to see a movie.
[¶12] The district court held a one-day trial on August 2, 2017. The parties submitted proposed findings of fact and conclusions of law shortly thereafter. Several months later, on January 8, 2018, the district court entered its Findings of Fact, Conclusions of Law, and Order . The district court granted Father primary physical custody of BDC commencing February 1, 2018. The court granted Mother visitation the last full week of every month, but did not provide any additional visitation for holidays or extended time in the summer until BDC enters kindergarten. Father testified that if granted custody, he would not enroll BDC in kindergarten until he is six years old.
[¶13] Mother filed a Motion for New Trial or, in the Alternative, Motion to Alter or Amend Judgement (Rule 59 motion) on February 5, 2018 and requested a hearing. The *65 district court did not schedule a hearing or enter an order on Mother's post-judgment motion. Mother filed a notice of appeal on June 6, 2018.
DISCUSSION
I. Jurisdiction
[¶14] We first determine whether we have jurisdiction to consider this appeal. Evans v. Moyer , 2012 WY 111, ¶ 9, 282 P.3d 1203, 1208 (Wyo. 2012). The existence of jurisdiction is a question of law we review de novo. Golden v. Guion , 2016 WY 54, ¶ 11, 375 P.3d 719, 722-23 (Wyo. 2016) (citation omitted). Our jurisdiction is limited to timely appeals from final, appealable orders. W.R.A.P. 1.03(a) ; W.R.A.P. 1.04 ; see also Evans , ¶ 11, 282 P.3d at 1208 (citations omitted). A notice of appeal is timely if filed within 30 days from entry of the appealable order. W.R.A.P. 2.01(a). The district court entered its Findings of Fact, Conclusions of Law, and Order on January 8, 2018. Mother did not file her notice of appeal within 30 days following entry of that order, but instead filed her Rule 59 motion on February 5, 2018.
[¶15] A timely-filed Rule 59 motion tolls the time to file a notice of appeal if filed no later than 28 days after entry of the judgment. W.R.C.P. 59(b), (e) ; W.R.A.P. 2.02(a). The time for filing a notice of appeal begins anew after an order granting or denying the Rule 59 motion is entered, or when the motion is deemed denied. W.R.A.P. 2.02(b) ; see also Hodges v. Lewis & Lewis, Inc. , 2005 WY 134, ¶ 20, 121 P.3d 138, 144-45 (Wyo. 2005). Mother timely filed her Rule 59 motion on February 5, 2018; however, Father argues that the motion did not toll the time for filing a notice of appeal because the substance of the motion simply requests reconsideration of the district court's decision. See, e.g. , Sherman v. Rose , 943 P.2d 719, 721 (Wyo. 1997), overruled by Plymale v. Donnelly , 2006 WY 3, 125 P.3d 1022 (Wyo. 2006), and overruled by Essex Holding, LLC v. Basic Properties, Inc. , 2018 WY 111, 427 P.3d 708 (Wyo. 2018). Father acknowledges that we recently overruled our prior precedent supporting his position, but argues Essex should apply prospectively only. Essex Holding, LLC , ¶ 40, 427 P.3d at 721.
[¶16] Generally, civil case decisions apply retroactively because the "ruling of a court is deemed to state the true nature of the law both retrospectively and prospectively." Harvey By & Through Harvey v. Gen. Motors Corp. , 739 P.2d 763, 765 (Wyo. 1987) (citations omitted). "Whether the general rule should be departed from depends on whether a substantial injustice would otherwise occur." Id. (citations and emphasis omitted); see also Adkins v. Sky Blue, Inc. , 701 P.2d 549, 552 (Wyo. 1985) (citation omitted) (explaining that "where a decision might produce substantial inequitable results if applied retroactively, it is appropriate to avoid such hardship or injustice by providing for prospective operation only"). We see no reason to depart from the general rule.
[¶17] Prior to our decision in Essex , we held that if a post-judgment "motion was titled a motion to reconsider, or appeared after review of its substance to be a motion to reconsider," the time for appeal was not tolled. Essex Holding, LLC , ¶ 33, 427 P.3d at 718 (citations omitted). Applying this precedent, we dismissed several appeals for lack of jurisdiction. See, e.g. , Byrnes v. Harper , 2018 WY 21, ¶ 8, 411 P.3d 427, 430 (Wyo. 2018), overruled by Essex , 2018 WY 111, 427 P.3d 708 ; Lokey v. Irwin , 2016 WY 50, ¶ 8, 374 P.3d 311, 315 (Wyo. 2016), overruled by Essex , 2018 WY 111, 427 P.3d 708 ; Waldron v. Waldron , 2015 WY 64, ¶ 12, 349 P.3d 974, 977 (Wyo. 2015), overruled by Essex , 2018 WY 111, 427 P.3d 708 ; In re Estate of Nielsen , 2011 WY 71, ¶ 12, 252 P.3d 958, 961 (Wyo. 2011), overruled by Essex , 2018 WY 111, 427 P.3d 708. In Essex , we closely examined our prior precedent and determined that we had incorrectly interpreted federal law and, thus, improperly conflated the grounds on which a trial court decides a Rule 59(e) motion with the grounds used to determine if a motion constitutes "a valid Rule 59(e) motion for the purposes of tolling the time for appeal." Essex Holding, LLC , ¶ 34, 427 P.3d at 718. We further explained:
An appellate court wastes judicial resources by confirming that the [post-trial] motion did not repeat issues made before *66 judgment was entered. It is an 'arduous' process that is both 'inefficient' and susceptible to 'inconsistent results.' It compels this Court to review the merits of the motion to determine whether the motion could be asserted at all-effectively premising the validity of a post-judgment motion on the likelihood of its success. Finally, it denies the right of appeal to an appellant who files a post-judgment motion that merely repeats arguments, even though the very reason that a trial court should deny such a motion is that the appellant's 'proper recourse is appeal-not reargument.' 'We do not function for the purpose of ... mak[ing] an appeal disappear, but exist to administer justice to those who come to settle their disputes .'
Id. ¶ 39, 427 P.3d at 720 (citations and footnote omitted) (emphasis added). For these reasons, we held that a post-judgment motion, however titled, is treated as a Rule 59(e) motion and tolls the time for filing a notice of appeal if it challenges the merits of the judgment and is filed no later than 28 days after the entry of the judgment. Id. ¶ 40, 427 P.3d at 721. Retroactive application of this rule would not create injustice; it prevents it by allowing consideration of appeals on the merits. Id. ¶ 39, 427 P.3d at 720.
[¶18] Father also argues that Mother's appeal is untimely because Mother missed any tolled deadline to file her notice of appeal by one day. We disagree. Because the district court did not rule on Mother's Rule 59 motion, it was deemed denied 90 days after she filed it. W.R.C.P. 6(c)(4). In computing the time prescribed, the day of the event from which the designated period of time begins to run is not included. W.R.C.P. 6(a). The last day of the period is included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day that is not a Saturday, Sunday or legal holiday. Id. In this case, 90 days from February 5, 2018, fell on Sunday, May 6, 2018. Thus, Mother's Rule 59 motion was deemed denied on Monday, May 7, 2018, and Mother had 30 days thereafter within which to file a notice of appeal. W.R.C.P. 6(a) ; W.R.A.P. 2.02(b). Mother did so on June 6, 2018.
[¶19] We conclude that Mother's Rule 59 motion requested the district court to consider the merits of its order and was timely filed; thus, it tolled the time for an appeal. Mother timely filed her notice of appeal after her motion was deemed denied. We therefore have jurisdiction to consider the merits of Mother's appeal.
II. Custody Modification
[¶20] "We review a district court's decision on a petition to modify child custody for an abuse of discretion, and we will not disturb the decision absent a procedural error or a clear abuse of discretion." Johnson v. Clifford , 2018 WY 59, ¶ 8, 418 P.3d 819, 822 (Wyo. 2018) (citing Bishop v. Bishop , 2017 WY 130, ¶ 9, 404 P.3d 1170, 1173 (Wyo. 2017) ). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." Id. (quoting Bishop , ¶ 9, 404 P.3d at 1173 ). "A district court does not abuse its discretion if it could reasonably conclude as it did." Id. To determine whether the district court's decision was reasonable, "[w]e consider the evidence in the light most favorable to the district court's decision, 'affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.' " Bishop , ¶ 9, 404 P.3d at 1173 (quoting Durfee v. Durfee , 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo. 2009) ). This Court may not reweigh the evidence. See Paden v. Paden , 2017 WY 118, ¶ 13, 403 P.3d 135, 140 (Wyo. 2017).
[¶21] Judicial discretion is not absolute, however:
Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.
Love v. Love , 851 P.2d 1283, 1291 (Wyo. 1993) (quoting Vanasse v. Ramsay , 847 P.2d 993, 996 (Wyo. 1993) ). "[I]n every case, the record must support the district court's determination that the modification is in the *67 children's best interests through 'the proceeding transcripts, by opinion letter, or as findings in the written order' to allow appellate review." Booth v. Booth , 2019 WY 5, ¶ 22, 432 P.3d 902, 910 (Wyo. 2019) (quoting Jackson v. Jackson , 2004 WY 99, ¶ 15, 96 P.3d 21, 26 (Wyo. 2004) ).
A. Material Change in Circumstances
[¶22] Mother claims the district court abused its discretion when it determined that a material change in circumstances justified reopening the original custody order. She argues that Father was required to show that her move to Montana adversely affected BDC's welfare before her relocation could constitute a material change in circumstances necessary to allow review of the district court's prior custody determination. Mother further argues that any change in circumstances must be material to the relief sought. She asserts that although a parent's relocation may constitute a material change in circumstances, any change in circumstances due to her relocation was material only as to Father's visitation and was not material to custody modification.[6] Neither of Mother's arguments hold merit.
[¶23] "A district court's finding concerning a material change in circumstances is principally a factual determination to which we accord great deference." Meehan-Greer v. Greer , 2018 WY 39, ¶ 17, 415 P.3d 274, 279-80 (Wyo. 2018) (citation omitted). "In order to be considered material and justify reopening the decree, the change in circumstances must affect the welfare of the children." Jacobson v. Kidd , 2018 WY 108, ¶ 17, 426 P.3d 813, 821 (Wyo. 2018) (citing Hanson v. Belveal , 2012 WY 98, ¶ 34, 280 P.3d 1186, 1197 (Wyo. 2012) ; Kappen v. Kappen , 2015 WY 3, ¶ 15, 341 P.3d 377, 382 (Wyo. 2015) ).
[¶24] "[W]e have never said the district court must wait until the children exhibit negative consequences before reconsidering custody and/or visitation." Jacobson , ¶ 19, 426 P.3d at 821. Rather, the change must hold "some relevance in the child[']s life." Id. (quoting Kappen , ¶ 15, 341 P.3d at 382 ) (internal quotation marks omitted). We have recognized that "[a] circumstance may have relevance in a child's life before there are outward signs of harm." Id. Accordingly, the district court "may take into account the obvious or natural effects of a situation in finding a material change in circumstance." Id. Mother's contention that Father needed to demonstrate "indication[s] of stress," struggles in BDC's social life, or other "unusual behavioral issues," before the court could determine that Mother's move to Montana was a material change relative to custody modification, is contrary to this established precedent.
[¶25] Mother's attempt to restrict review of the original order to Father's visitation schedule is also unavailing. Mother admits that her relocation created a material change in circumstances because it rendered alternating weekend visitation unworkable. However, she argues that the material change is only relevant to modifying the visitation schedule-not to custody modification. We rejected a similar argument in Booth , ¶ 21, 432 P.3d at 909.
[¶26] In Booth , the mother argued that the change in circumstances concerned only the location of the father's visitation and not the visitation schedule itself. Id. In rejecting the mother's argument, we explained that once a material change in circumstances has been found, "the court is required to make an *68 independent determination about what, if any, modification is in the children's best interest." Id. We further explained that the "court may consider all factors that affect the best interests of the children, and is not limited to the factors identified by the parties." Id. Thus, if a material change exists, as it does here, the district court may properly review both custody and visitation issues to determine whether modification of the original order is warranted.
B. Best Interests
[¶27] A material change in circumstances does not automatically warrant a change in custody. Jensen , ¶ 12, 297 P.3d at 773 ; Arnott , ¶ 41, 293 P.3d at 458 (citation omitted). Instead, "[c]ustody must be arranged so as to be in the best interests of the child(ren) on an individualized basis." Jensen , ¶ 12, 297 P.3d at 773 (quoting JRS v. GMS , 2004 WY 60, ¶ 13, 90 P.3d 718, 724 (Wyo. 2004) ). The district court must consider both statutory and non-statutory factors when exercising its discretion to devise a custody arrangement in the best interests of the child. See, e.g. , Wyo. Stat. Ann. § 20-2-201(a), (c) (LexisNexis 2017) (statutory factors, spousal abuse, and child abuse); Martin v. Hart , 2018 WY 123, ¶ 22, 429 P.3d 56, 64 (Wyo. 2018) (primary caregiver); Paden , ¶¶ 11, 19, 403 P.3d at 139, 141 (separation of siblings and relocation factors); Love , 851 P.2d at 1289-90 (citation omitted) (child's custodial preference). "No single factor is determinative," and "depending on the case, different factors will present a greater need for emphasis." Martin , ¶ 21, 429 P.3d at 63. The district court "must look to the totality of the evidence and fashion a custody arrangement in the best interests of the child." Williams v. Williams , 2016 WY 21, ¶ 16, 368 P.3d 539, 545 (Wyo. 2016) (citations omitted).
[¶28] In considering BDC's best interests, the district court made the following findings:
6. Mother relocated to Montana with very little discussion with Father about the move. Additionally, the parties were unable to develop a new parenting plan to address the geographic distance that now exists between them.
7. Mother returned to the Johnson County area due to complications associated with her pregnancy and failed to notify Father of the relocation. Mother plans to return to the northwest Montana area following the birth of her new child.
8. Father presently works for a large cattle operation and his work is primarily completed during the day light hours. Additionally, Father works in an area that is geographically close to his extended family which gives him access to a number of care providers who are related to the minor child in this case. Father's work schedule is flexible and he can make adjustments to accommodate for providing for his child. Furthermore, Father's work schedule is lighter during the fall and winter months which allows him to be more available to care [for] his minor child.
9. Mother is presently working at a local restaurant but upon returning to Montana will return to employment at a local resort. This employment requires her to be away from the minor child in the evening several days a week.
The district court made additional findings when it analyzed the statutory best interest factors.[7] Through its analysis, the district *69 court found that factors (i), (ii), (iii), (v), (vi), and (ix) did not weigh in favor of one parent or the other. However, the district court determined that three statutory factors-(iv), (vii), and (viii)-weighed in Father's favor and warranted a change in custody.
[¶29] Mother disagrees with the district court's findings. She contends that the findings are insufficient and demonstrate the court failed to consider: (1) the impact of separating BDC from his sister, K; (2) the impact of separating BDC from his primary caregiver; and (3) the relocation factors specific to custody modification. She also contends that the district court's findings as to the statutory best interest factors weighing in Father's favor are contrary to the evidence. Mother argues that the district court's various errors led to a custody arrangement that promotes instability and is not in BDC's best interests.
1. Sibling Separation
[¶30] We have consistently acknowledged a strong public policy in favor of preserving sibling relationships and "[k]eeping siblings together in the same household[.]" Paden , ¶ 19, 403 P.3d at 141 (citing Aragon v. Aragon , 2005 WY 5, ¶ 24, 104 P.3d 756, 763 (Wyo. 2005) ). This policy preference is "equally applicable whether the children are full sibling, half sibling, or stepsiblings." Aragon , ¶ 26, 104 P.3d at 764 (citation omitted). Accordingly, we have instructed trial courts to explicitly articulate the reasons supporting any decision to separate siblings to assure that a "comprehensive evaluation of all relevant factors occurred" prior to the custody determination. Produit v. Produit , 2001 WY 123, ¶ 11, 35 P.3d 1240, 1243 (Wyo. 2001) (quoting Pace v. Pace , 2001 WY 43, ¶ 17, 22 P.3d 861, 867 (Wyo. 2001), overruled on other grounds by Bruegman v. Bruegman , 2018 WY 49, 417 P.3d 157 (Wyo. 2018) ); Paden , ¶ 19, 403 P.3d at 141 ; Aragon , ¶ 24, 104 P.3d at 763. We also have admonished trial counsel that they cannot remain passive on the issue of sibling separation and
must assist the trial judge in articulating on the record the relevant factors and their relative weight which, in the lawyer's professional judgment, should act as a foundation for the trial court's exercise of judicial discretion.
Paden , ¶ 19, 403 P.3d at 141 (citation omitted).
[¶31] The record reflects that BDC has numerous half- and step-siblings, and that the district court's order separated BDC from his half-sister K. Trial counsel did not remain passive on this issue as they explicitly addressed sibling separation in their proposed findings of fact and conclusions of law. The district court nevertheless failed to address this material factor.
2. Primary Caregiver
[¶32] We have recognized that the child's dependence on the primary caregiver is an important consideration in determining custody and is often a "crucial factor." Williams , ¶¶ 19, 21, 368 P.3d at 545-46. We recently reinforced the mandatory consideration of a child's separation from the primary caregiver in Martin , where we held, "[w]hile not determinative, primary caregiver status is a weighty factor that the district court must consider." Martin , ¶ 22, 429 P.3d at 64 (citing Bruegman , ¶ 41, 417 P.3d at 170 ; Williams , ¶ 19, 368 P.3d at 546 ; Walter v. Walter , 2015 WY 53, ¶¶ 10-12, 346 P.3d 961, 965 (Wyo. 2015) ; In re Paternity of JWH , 2011 WY 66, ¶ 11, 252 P.3d 942, 947 (Wyo. 2011) ). The primary caregiver is "the parent who is primarily responsible for the hands-on, day-to-day care of the child." Williams , ¶ 21, 368 P.3d at 546 ; see also Buttle v. Buttle , 2008 WY 135, ¶ 8, 196 P.3d 174, 177 (Wyo. 2008), overruled by Bruegman , 2018 WY 49, 417 P.3d 157 (describing mother as the primary caregiver where she woke the child in the morning, got him ready, took him to daycare, *70 picked him up after work, bathed him, and put him to bed each night).
[¶33] Although the parties addressed BDC's primary caregiver at trial and in their proposed findings of fact and conclusions of law, neither the record nor the district court's order shows that the court weighed primary caregiver status in awarding custody to Father. Here again, a material factor deserving significant weight was ignored.
3. Relocation Factors
[¶34] We have identified three non-exclusive factors to aid the district court in its best interests determination "when modification of a custody order is sought due to a parent's relocation[.]" Paden , ¶ 11, 403 P.3d at 139 ; Arnott , ¶ 33, 293 P.3d at 455. Those factors are "the attributes and characteristics of the parents and children and how the children have fared under the original custody and visitation arrangement, the relocating parent's motives for proposing the move, and whether reasonable visitation is possible for the remaining parent." Paden , ¶ 11, 403 P.3d at 139 (quoting Arnott , ¶ 33, 293 P.3d at 455 ); see also Love , 851 P.2d at 1288. "Depending on the case, different factors will present a greater need for emphasis." Paden , ¶ 11, 403 P.3d at 139 (quoting Pahl v. Pahl , 2004 WY 40, ¶ 10, 87 P.3d 1250, 1254 (Wyo. 2004) ).
[¶35] Regarding the first relocation factor, the district court found that both Mother and Father are "physically and mentally able to care for BDC," both are "fully capable and have demonstrated an ability to care for BDC," both enjoy a good relationship with BDC, and both parents have "consistently communicated well, and regularly, over the past four years[.]" The district court further found that "there is little in the way of parent-child communication that needs to be improved upon[.]"
[¶36] The district court made no specific findings regarding the second and third relocation factors-Mother's motive for relocating and whether reasonable visitation is still possible for Father. Because Mother counterclaimed for modification of visitation, this case, in particular, calls for consideration of whether reasonable visitation is still possible for Father. Paden , ¶ 11, 403 P.3d at 139 ; cf. Pahl , ¶ 20, 87 P.3d at 1256 (upholding the district court's determination that mother's relocation to Germany was not in the best interests of the child where reasonable visitation was cost prohibitive). Both parties presented modified visitation schedules for the district court to consider; the record, however, fails to show that the court considered this case-relevant relocation factor.
CONCLUSION
[¶37] The district court did not abuse its discretion when it determined that a material change in circumstances justified reopening its prior custody and visitation order. However, we conclude the district court abused its discretion when it ignored the material factors discussed above. We therefore reverse the district court's custody modification order and remand for further proceedings consistent with this opinion.
KAUTZ, Justice, specially concurring, in which DAVIS, Chief Justice, joins.
[¶38] I agree that, under the circumstances presented here, this case must be reversed and remanded to the district court for additional findings regarding separation of the siblings because our precedent requires the district court make specific findings on that issue. See, e.g. , Produit v. Produit , 2001 WY 123, ¶ 11, 35 P.3d 1240, 1243 (Wyo. 2001) (quoting Pace v. Pace , 2001 WY 43, ¶ 17, 22 P.3d 861, 867 (Wyo. 2001) ). I also agree the district court abused its discretion by failing to make findings about the relationship between BDC and his primary caregiver because the parties requested findings of fact and conclusions of law under W.R.C.P. 52. However, my analysis includes the following items not in the majority's approach.
[¶39] Appellate review of district court custody determinations and modifications begins with the acknowledgment that district courts have broad discretion. Our precedent is very clear in this regard:
This Court has consistently recognized the broad discretion enjoyed by a district court in child custody matters. We will not interfere with the district court's custody determination absent procedural error or a *71 clear abuse of discretion. In determining whether an abuse of discretion has occurred, our primary consideration is the reasonableness of the district court's decision in light of the evidence presented. We view the evidence in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.
Walker v. Walker , 2013 WY 132, ¶ 22, 311 P.3d 170, 176 (Wyo. 2013) (quoting Durfee v. Durfee , 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo. 2009) (other citations omitted)).
[¶40] I agree with the majority that the district court abused its discretion by failing to make explicit findings regarding BDC's primary caregiver, not because the "primary caregiver" is a special factor which always merits explicit findings, but because the parties requested findings under W.R.C.P. 52(a).
[¶41] We encourage district courts to place on the record the facts crucial to their child custody decisions even without a Rule 52(a) request. TW v. BM , 2006 WY 68, ¶ 14, 134 P.3d 1262, 1266 (Wyo. 2006) ; Fergusson v. Fergusson , 2002 WY 66, ¶ 15, 45 P.3d 641, 645-46 (Wyo. 2002). However, once a Rule 52(a) request is made, as in this case, the district court is obligated to make specific findings of fact and conclusions of law. Fergusson , ¶ 15, 45 P.3d at 645-46. ("The onus [is] upon the parties to request findings of fact and conclusions of law" under Rule 52(a) in a child custody modification action.). It must "state in writing its special findings of fact separately from its conclusions of law." Rule 52(a)(1)(A).
[¶42] We have not prescribed specific requirements for Rule 52(a) findings of fact in child custody cases. See generally , In re KRA , 2004 WY 18, ¶¶ 14-15, 85 P.3d 432, 437 (Wyo. 2004) (concluding, without analysis, the district court complied with its duty under Rule 52(a) by outlining its findings and separately stating its conclusions of law). However, we have discussed the requirements for Rule 52(a) findings of facts in other legal contexts.
This Court has said that findings pursuant to a W.R.C.P. 52(a) request must be sufficient to indicate the factual basis for the decision on the contested matters. Lebsack v. Town of Torrington , 698 P.2d 1141, reh. denied and case remanded 703 P.2d 338, order amended 707 P.2d 1389 (Wyo.1985). We have further stated:
[T]he requested findings need not be set forth in elaborate detail but need only be clear, specific and complete in concise language informing the appellate court of the underlying bases for the trial court's decision.
Whitefoot v. Hanover Insurance Company , 561 P.2d 717, 720 (Wyo.1977).
O's Gold Seed Co. v. United Agri-Products Fin. Servs., Inc. , 761 P.2d 673, 675-76 (Wyo. 1988). The district court did not make sufficient findings regarding BDC's primary caregiver to satisfy the O's Gold standard.
[¶43] The majority opinion addresses the primary caregiver factor separately from the considerations set out in Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2017). In fact, as we recognized in Bruegman v. Bruegman , 2018 WY 49, ¶ 38, 417 P.3d 157, 169-70 (Wyo. 2018), the primary caregiver consideration is part of the analysis of the quality of the relationship between the child and each parent required by § 20-2-201(a)(i). I do not agree with the emphasis the majority opinion places upon the primary caregiver status in the context of a custody modification. When custody has already been established, there will typically be a primary custodian and a parent who has the right to visitation. The primary custodian will, likely, have responsibility for the child a greater amount of time than the other parent. However, during their respective periods of custody, each parent will be primarily responsible for the child. This is different from an initial custody determination where the court may determine that one parent has taken on a larger share of the responsibility for caring for the child throughout his or her life.
[¶44] The primary caregiver discussion in each of the cases cited in the majority opinion was in the context of an initial custody determination. See Bruegman , ¶ 1, 417 P.3d at 159 ; Martin v. Hart , 2018 WY 123, ¶ 1, 429 P.3d 56, 59 (Wyo. 2018) ; Williams v. Williams , 2016 WY 21, ¶ 1, 368 P.3d 539, 541 (Wyo. 2016) ;
*72 In re Paternity of JWH , 2011 WY 66, ¶¶ 3-5, 252 P.3d 942, 945 (Wyo. 2011) ; Buttle v. Buttle , 2008 WY 135, ¶ 1, 196 P.3d 174, 175-76 (Wyo. 2008) (overruled in part on other grounds by Bruegman , 417 P.3d 157 ). Given this distinction, many of the strong statements from those cases recited in Paragraph 32 of the majority opinion are not particularly relevant to modification of child custody. In fact, in custody modification actions, the primary caregiver determination mimics our concern with undermining the child's stability, which is always taken into account in custody modifications: "When one parent has primary custody, a change of custody raises a significant concern about relationship stability and security for the child." Johnson v. Clifford , 2018 WY 59, ¶ 12, 418 P.3d 819, 823 (Wyo. 2018) (citing Gurney v. Gurney , 899 P.2d 52, 54 (Wyo. 1995) ). Thus, in the context of child custody modification, it seems particularly important to focus not so much on who the primary caregiver is, but on the relationship each parent has with the child in accordance with § 20-2-201(a)(i).
[¶45] Finally, I believe we should provide greater direction to the district court upon remand. Our remand should direct the district court to make specific findings with respect to sibling relationships and separation and to the quality of relationship/primary caregiver status/child stability, based on Mother's Rule 52 demand. Then, the district court should re-evaluate the best interests of BDC giving consideration to those additional findings.

BDC was now three years old and Father's graduated visitation consisted of every other weekend, alternating every two weeks in the summer months, and holiday visitation. While Father was also entitled to visitation every Wednesday evening, he instead kept BDC a few hours longer during his weekend visits.

Mother filed a second notice of her intent to move on September 9, 2016, which changed her new address from Missoula to Plains.

Mother married her fiancé on March 1, 2017. Her husband has three children, ages nine, six, and five, who visit frequently and regularly in the winter, but less regularly from May to October due to their father's construction work schedule.

The alternative visitation schedule provided Father with alternating weekend visitation. Father testified he received all of his visitation except one weekend when Mother attended a family funeral.

Mother did not notify Father of her plan to stay in Buffalo for the summer until just prior to her scheduled visit with BDC on June 8.

In Arnott , we explained that new issues created by a parent's relocation may preclude application of res judicata, including when there is a change in the ability of the parties to maintain the existing parenting agreement and a change in the ability of the children to maintain a close relationship with the remaining parent, inter alia . Arnott v. Arnott , 2012 WY 167, ¶ 39, 293 P.3d 440, 457-58 (Wyo. 2012). The evidence demonstrates that the geographic distance between the parties' residences after Mother relocated rendered the current parenting agreement unworkable and her move necessarily affected BDC's relationship with his Father due to the increase in time between visits. These factors support the district court's determination that Mother's relocation to Montana created a material change in circumstances and precluded application of res judicata with respect to the prior custody and visitation order. See, e.g. , Cook v. Moore , 2015 WY 125, ¶ 15, 357 P.3d 749, 753-54 (Wyo. 2015) ; Jensen v. Milatzo-Jensen , 2013 WY 27, ¶¶ 11-13, 297 P.3d 768, 773 (Wyo. 2013) ; Arnott , ¶ 39, 293 P.3d at 458.

The statutory factors are:
(i) The quality of the relationship each child has with each parent;
(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for the child's care by others as needed;
(iii) The relative competency and fitness of each parent;
(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
(v) How the parents and each child can best maintain and strengthen a relationship with each other;
(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;
(viii) Geographic distance between the parents' residences;
(ix) The current physical and mental ability of each parent to care for each child;
(x) Any other factors the court deems necessary and relevant.
Wyo. Stat. Ann. § 20-2-201(a).