# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 144

OCTOBER TERM, A.D. 2022

November 15, 2022

BRYAN PETTENGILL,

**Appellant**
**(Petitioner),**

**v.**

S-22-0067

CORTNI CASTELLOW,

**Appellee**
**(Respondent).**

*Appeal from the District Court of Sheridan County*
*The Honorable William J. Edelman, Judge*

*Representing Appellant:*
James I. Bush, Legal Aid of Wyoming, Inc., Gillette, Wyoming.

*Representing Appellee:*
Stacy M. Kirven, Kirven Law, LLC, Sheridan, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, JJ., and ROBINSON, D.J.*

*BOOMGAARDEN, J., delivers the opinion of the Court; ROBINSON, D.J., files a dissenting opinion in which KAUTZ, J., joins.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Justice.**

[¶1]    In *Castellow v. Pettengill*, 2021 WY 88, 492 P.3d 894 (Wyo. 2021) (*Castellow I*), we reversed the district court because its W.R.C.P. 52(a) findings were insufficient to support its order requiring Cortni Castello (Mother) and Bryan Pettengill (Father) to share physical custody of their daughter CP.  On remand, the district court considered no new evidence and awarded Mother primary physical custody.  Father appeals, challenging the adequacy of the district court's Rule 52(a) findings.  We affirm.

## *ISSUE*

[¶2]    We rephrase the single issue Father raises on appeal:

> Are the district court's Rule 52(a) findings sufficient to support its order awarding Mother primary physical custody of CP?

## *FACTS*

[¶3]    We set forth many of the relevant facts in *Castellow I*:

> CP was born in March 2013.  After Father and Mother's relationship ended, Father moved out, but remained in town.  He and Mother entered into an informal fifty-fifty shared custody arrangement.
>
> In July 2017, Mother began a new relationship, which strained the informal custody arrangement.  Father filed his petition to establish custody, visitation, and child support at the end of August 2017.  On November 9, 2017, the district court entered its Order on Temporary Custody and ordered Mother and Father to share physical custody of CP, alternating weekly.  During this time, the parties had some difficulty communicating and respecting one another's parenting time and choices.  Mother is deeply religious; she accused Father of "attacking" her faith by letting CP watch the Disney movie, Hercules.  Mother also made statements to CP about Father's lack of belief—CP reportedly said that, "Dad has sinned in his heart if he didn't believe in God, then he has—he would have the devil in him."  Meanwhile, Father withheld CP from Mother for a month prior to the November 2 hearing.  After an issue arose between CP and ML, the daughter of Father's fiancée, Father suggested play therapy for CP.  Mother declined, but later decided CP should attend counseling.

1

> Without consulting Father, Mother selected Dr. Khanh Tran. Despite these difficulties, the parties largely adhered to the shared custody arrangement.
>
> The district court held a one-day hearing on Father's petition September 4, 2019. At the start of the hearing, both parties requested written findings of fact and conclusions of law pursuant to Rule 52(a). Each party also requested primary physical custody with visitation for the other parent. Mother called Dr. Tran who testified that the current week-to-week schedule was not in CP's best interest because there was no way to easily transition between the different homes and parenting styles. Dr. Tran also testified that shared custody could succeed, but only if both parties put in "a lot of work" to learn to effectively co-parent. At the conclusion of the hearing, the district court expressed disappointment that neither parent advocated for a shared custody arrangement, asked the parties to submit proposed findings of fact and conclusions of law no later than September 13, 2019, and ordered the temporary arrangement to remain in place until the court issued its decision.

*Castellow I*, ¶¶ 3–5, 492 P.3d at 896–97.

[¶4]   In October 2020, more than a year after the evidentiary hearing, the district court entered an order requiring the parties to share physical custody of CP. Mother raised two issues on appeal: first, she argued the district court's 13-month delay in issuing a final order constituted reversible error; second, she argued the district court's Rule 52(a) findings were insufficient to support shared physical custody. *Id.* ¶ 2, 492 P.3d at 896. Though we found the delay troubling, we concluded it was not grounds for reversal.[1] *Id.* ¶¶ 8–9, 16, 492 P.3d at 897–98, 901. But we agreed with Mother that the district court's Rule 52(a) findings were insufficient under the circumstances. *Id.* ¶¶ 8, 10–16, 492 P.3d at 897, 898–901.

[¶5]   We highlighted two main problems with the district court's findings. *See id.* ¶ 8, 492 P.3d at 897. First, the district court misinterpreted our holding in *Bruegman v. Bruegman*, incorrectly stating shared custody is the "most favorable custodial arrangement[,]" instead of recognizing it is "*on an equal footing* with other forms of custody." *Id.* ¶ 13, 492 P.3d at 899 (quoting *Bruegman v. Bruegman*, 2018 WY 49, ¶ 16,

---

[1] The special concurrence commented on the delay, and it bears repeating that "[t]he timely resolution of cases is fundamental to the judicial system" and, conversely, failure to timely resolve cases "destroys confidence in our system of government." *Castellow I*, ¶ 21, 492 P.3d at 902 (Kautz, J., specially concurring).

417 P.3d 157, 164 (Wyo. 2018)).  Second, "[t]he district court's decision to continue the week-on, week-off shared custody arrangement directly contradict[ed] Dr. Tran's testimony."[2]  *Id.* ¶ 14, 492 P.3d at 900.  While "the district court touched on some of the statutory [best interest] factors" under Wyo. Stat. Ann. § 20-2-201, it "ignored at least two" that were critical to its shared custody decision given "Dr. Tran's testimony and the challenges the parents had been experiencing with joint custody"—namely, "[h]ow the parents and child interact and communicate with each other and the ability and willingness of each parent to provide care without intrusion and respect the other parent's rights and responsibilities[.]"  *Id.* ¶ 15, 492 P.3d at 900 (citing Wyo. Stat. Ann. § 20-2-201(a)(vi),

---

[2] For example, when asked whether shared custody was in CP's best interest, Dr. Tran responded:

> I think that's a tough situation for a kiddo that age because there's so much—and you have two different parenting styles, there's conflict or tension between them.  There's no really ease—ease into a transition that will make her feel more comfortable.  That's really tough to—to do it that way, . . . especially [with] what's going on between the parents.

*Castellow I*, ¶ 14, 492 P.3d at 900.  And when asked whether Mother and Father "could succeed with shared physical custody[,]" Dr. Tran responded:

> A. I believe they could, but there has to be conditions.
>
> Q. What would it take for—for them to effectively exercise [ ] a shared custody arrangement?
>
> A. Openness, the willingness to work together.  I think they both have their individual problems, challenges that they could work with or work at.  And I don't see that it's such a detriment that they're incapable of doing so.  Actually, I find them to be both highly intellectual, highly intelligent.  But there needs to be more.  That in and of itself is not sufficient.  They have to be emotionally intelligent too.  But that—that can be cultivated.
>
> Q. So would you say that both of them have trouble being open and willing to work with each other?
>
> A. I think that they—they would be willing. I think there's a lot of resistance because of [the] context of what's going on now. . . . I understand that there is conflict there and they seem rigid in their thinking, however I think if you approach it in a very open-minded, compassionate and humble approach, that they're capable.
>
> Q. So would you agree that, you know, they have some issues to work on to effectively coparent?
>
> A. They need a lot of work.  But, they can—they got to help each other in order for that to work.

*Id.*

3

(vii)). Noting "more robust finding[s] of fact and conclusions of law" might have allowed us to defer to the district court, we concluded the district court abused its discretion by ordering shared custody based on its "meagre analysis, its clearly erroneous finding regarding the likelihood of success for shared custody, and its misunderstanding of the holding in *Bruegman*[.]" *Id.* ¶ 5, 492 P.3d at 900–01. We therefore reversed and remanded. *Id.* ¶ 16, 492 P.3d at 901.

[¶6]    On remand, the district court held a status hearing to determine how best to proceed. The status hearing was not recorded and the record does not reflect what occurred at the hearing. According to Mother, the parties agreed the district court should review the evidence presented at the September 2019 evidentiary hearing and issue a decision without receiving any new evidence. Father does not dispute Mother's characterization of what happened at the status hearing.

[¶7]    In its January 2022 order, the district court cited the correct rules governing its custody determination and made findings of fact based on the evidence presented at the September 2019 evidentiary hearing. The district court then found it was in CP's best interest for the parties to have joint legal custody, for Mother to have primary physical custody, and for Father to have reasonable visitation. Father timely appealed, challenging the adequacy of the district court's Rule 52(a) findings to support its order awarding Mother primary physical custody of CP, instead of requiring the parties to share physical custody or awarding him primary physical custody. Additional facts will be set forth as relevant to our analysis.

## STANDARD OF REVIEW

[¶8]

> Child custody and visitation are within the sound discretion of the [district] court. "A district court does not abuse its discretion if it could reasonably conclude as it did." We review the record to determine if sufficient evidence supports "the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party." We review the district court's conclusions of law de novo. "Interpretation of court rules is a question of law we review de novo."

*Castellow I*, ¶ 7, 492 P.3d at 897 (internal citations omitted).

## DISCUSSION

[¶9]    W.R.C.P. 52(a) states in relevant part:

4

(a) *General and Special Findings by Court.* —

(1) Trials by the Court or Advisory Jury. — Upon the trial of questions of fact by the court, or with an advisory jury, it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant.

. . . .

(A) Requests for Written Findings. — If one of the parties requests it before the introduction of any evidence, with the view of excepting to the decision of the court upon the questions of law involved in the trial, the court shall state in writing its special findings of fact separately from its conclusions of law[.]

W.R.C.P. 52(a)(1)(A).

[¶10]  We have long encouraged district courts to make findings of fact in custody cases even though generally there is no requirement to do so unless there is a Rule 52(a) request.[3] *See, e.g.*, *Castellow I*, ¶ 10, 492 P.3d at 898 (citing *Kimzey v. Kimzey*, 2020 WY 52, ¶ 38 n.2, 461 P.3d 1229, 1241 n.2 (Wyo. 2020)); *Stonham v. Widiastuti*, 2003 WY 157, ¶ 16, 79 P.3d 1188, 1193 (Wyo. 2003) (citing *Resor v. Resor*, 987 P.2d 146, 148 (Wyo. 1999); *Reavis v. Reavis*, 955 P.2d 428, 431–32 (Wyo. 1998))).

> To play fair, a [court] relying on discretionary power should place on record the circumstances and factors that were crucial to [its] determination.  [The court] should spell out [its] reasons as well as [it] can so that counsel and the reviewing court will know and be in a position to evaluate the soundness of [its] decision.

*Castellow I*, ¶ 10, 492 P.3d at 898 (quoting *Kimzey*, ¶ 38 n.2, 461 P.3d at 1241 n.2). Remand may be necessary if it is not obvious from the record that the district court considered the best interest factors under Wyo. Stat. Ann. § 20-2-201, and any relevant non-statutory factors.  *See Stonham*, ¶ 16, 79 P.3d at 1193–94 (citing *Fergusson v. Fergusson*, 2002 WY 66, ¶ 16, 45 P.3d 641, 646 (Wyo. 2002)); *Ianelli*, ¶ 27, 444 P.3d at 68 (collecting cases on non-statutory factors).

---

[3] One notable exception to the general rule applies when a district court decides to separate siblings. *See Ianelli v. Camino*, 2019 WY 67, ¶ 30, 444 P.3d 61, 69 (Wyo. 2019); *Produit v. Produit*, 2001 WY 123, ¶ 11, 35 P.3d 1240, 1243 (Wyo. 2001).  "[W]e have instructed trial courts to explicitly articulate the reasons supporting any decision to separate siblings to assure that a 'comprehensive evaluation of all relevant factors occurred' prior to the custody determination." *Ianelli*, ¶ 30, 444 P.3d at 69 (citation omitted).

[¶11] Where, as here, there is a request pursuant to W.R.C.P. 52(a), the rule plainly requires the district court to "state in writing its special findings of fact separately from its conclusions of law[.]" W.R.C.P. 52(a)(1)(A). Aside from recognizing this requirement, and explaining the reasons why specific findings are helpful to counsel and the reviewing court, we have not further expounded on what Rule 52(a) findings should look like in child custody cases. *See Ianelli*, ¶ 42, 444 P.3d at 71 (Kautz, J., specially concurring); *see generally*, *In re KRA*, 2004 WY 18, ¶¶ 14–15, 85 P.3d 432, 437 (Wyo. 2004) (concluding, without analysis, the district court complied with its duty under Rule 52(a) by outlining its findings and separately stating its conclusions of law). In other types of cases, we have said:

> findings pursuant to a W.R.C.P. 52(a) request must be sufficient to indicate the factual basis for the decision on the contested matters. We have further stated:
>
> [T]he requested findings need not be set forth in elaborate detail but need only be clear, specific and complete in concise language informing the appellate court of the underlying bases for the trial court's decision.

*O's Gold Seed Co. v. United Agri-Products Fin. Servs., Inc.*, 761 P.2d 673, 675–76 (Wyo. 1988) (internal citations omitted).

[¶12] Consistent with this reasoning, it seems clear a determination of whether a district court's Rule 52(a) findings are sufficient depends on the facts and circumstances of the case. *See Castellow I*, ¶ 11, 492 P.3d at 899 (examining the district court's findings "in light of the particular facts of this custody modification"). In this case, our determination whether the best interest findings are sufficient turns on whether they inform us why the district court awarded Mother primary physical custody and permit us to evaluate the soundness of that decision. *See id.* ¶¶ 11–15, 492 P.3d at 899–901. We conclude they do.

[¶13] A child's best interest is "'paramount' in custody and visitation decisions."[4] *Id.* ¶ 12, 492 P.3d at 899 (citation omitted). "No single factor is determinative. The district

---

[4] The best interest factors are set forth in Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2021), which states:

> In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:
>
> (i) The quality of the relationship each child has with each parent;
> (ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
> (iii) The relative competency and fitness of each parent;

6

court 'must look to the totality of the evidence and fashion a custody arrangement in the best interests of the child.'" *Id.* (citing *Ianelli*, ¶ 27, 444 P.3d at 68).

[¶14]   The district court found most of the best interest factors to be neutral.  It found CP "has a good relationship with both parents"; "both parents have been willing to relinquish care of the child to the other at the specified times"; "[b]oth parties reside in homes which are appropriate for the minor child"; "[b]oth parties can provide adequate care for CP and arrange for childcare, if needed"; "[b]oth parents seem capable of raising CP and making decisions in her best interest"; "both Father and Mother are willing to accept the responsibilities of parenting"; and "[n]either parent has substance abuse problems."  *See* Wyo. Stat. Ann. § 20-2-201(a)(i), (ii), (iii), (iv), (ix).  The district court did not address the "[g]eographic distance between the parents' residences[,]" Wyo. Stat. Ann. § 20-2-201(a)(viii); however, testimony established both Mother and Father lived in Sheridan, and Father agrees this factor is not at issue on appeal.  As to factors (vi), (vii), and (x), the district court addressed Dr. Tran's concerns about shared custody and Mother's prior relationship with her live-in boyfriend.

[¶15]   Though the district court did not expressly weigh any factor for or against Mother or Father, the reasons for its decision to award Mother primary physical custody of CP are otherwise apparent and legally sound.  First and foremost, the district court implicitly decided it was in CP's best interest for Mother to have primary physical custody because Mother could provide CP a more stable day-to-day environment than Father given her employment history, income, and living arrangement.  *See Kappen*, ¶ 30, 341 P.3d at 385 ("In the context of custody disputes, we have asserted that 'stability in a child's environment is of utmost importance to the child's well-being.'" (citation omitted)).  It found:

> 16.     Mother has been employed as a paralegal with the same law firm since 2014.  Mother has an 8:00 am to 5:00 pm work schedule and maintains a steady income.  At the time of the

---

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
(v) How the parents and each child can best maintain and strengthen a relationship with each other;
(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;
(viii) Geographic distance between the parents' residences;
(ix) The current physical and mental ability of each parent to care for each child;
(x) Any other factors the court deems necessary and relevant.

hearing held on November 2, 2017, Father was enrolled in Sheridan College, his schedule was governed by his class schedule. Father primarily relied on student loans for income. Father anticipates he will graduate in May 2022, at which point he will seek employment as a teacher.

. . . .

19. Testimony was provided on Mother's previous live-in boyfriend and his belief that corporal punishment was an appropriate method for child rearing. No evidence was provided that CP had been subjected to such punishment, or that Mother was in favor of using it. Mother testified that the relationship ended in early August 2019 because she did not believe it was in the best interest of CP.

20. Testimony was provided that Father was engaged at the time of the hearing and his [fiancée] has two (2) other biological children who reside with her primarily.

[¶16] Second, the district court implicitly decided it was in CP's best interest for Mother to have primary physical custody because Mother could better foster a continued relationship between CP and her maternal grandmother and great-grandmother. It found:

The testimony established that CP's maternal grandmother and great-grandmother have provided the necessary daycare for the child when Mother is not available and/or when CP is not in school. Father testified that he previously utilized CP's maternal grandmother and great-grandmother for childcare, but for a period of time he ceased doing so. However, he planned to utilize them again. Both parents recognize that CP has a very strong relationship with both her maternal grandmother and great-grandmother.

[¶17] Importantly, we are not confronted with any of the problems we faced in *Castellow I* with respect to the district court's Rule 52(a) findings. The district court cited the correct law governing its decision on remand. *Cf. Castellow I*, ¶¶ 8, 13, 15, 16, 492 P.3d at 897, 900–01. Moreover, the district court's decision to award Mother primary physical custody is not directly contradicted by any evidence in the record; on the contrary, the September 2019 hearing transcript supports the district court's decision. *Cf. id.* ¶¶ 8, 14–15, 16, 492 P.3d at 897, 900–01. And the district court did not fail to address the best interest factors as they pertained to the case. *Cf. id.* ¶ 15, 492 P.3d at 900.

[¶18] Father's argument that the district court did not sufficiently explain why shared custody was not in CP's best interest is belied by the district court's findings highlighting Dr. Tran's concerns about Mother and Father continuing to share custody of CP. We similarly highlighted that testimony in *Castellow I* as grounds for reversal, noting the district court's finding about "the likelihood of success for shared custody" was clearly erroneous. *Id.* ¶ 15, 492 P.3d at 900–01. To the extent Father emphasizes that Dr. Tran declined to endorse either party for primary custody, he misconstrues the record, seeming to suggest Dr. Tran endorsed shared physical custody, which he did not. Dr. Tran declined to endorse either parent for primary physical custody because he had not assessed them to determine their parental fitness. He did, however, testify "that [CP] feels more comfortable and secure with [Mother]" and CP was more emotionally bonded to Mother. When asked to explain his "specific concerns" about placing CP primarily with Father, Dr. Tran questioned Father's ability to be "emotionally [] attune[d] to [CP's] needs" because was "an intellectual in the pure sense" who "respond[ed] to [CP] through verbal interaction" instead of on an emotional level.

[¶19] As no new evidence was presented on remand, and neither party requested shared custody, it is not difficult to discern why the district court eliminated shared physical custody as an option and instead focused on who should have primary physical custody—Mother or Father.

[¶20] Father's argument that the district court failed to consider CP's religious statements, *see supra* ¶ 3, under factors (v), (vi), and (vii) amounts to a request for this Court to weigh those factors in his favor, which we will not do. *See FFJ v. ST*, 2015 WY 69, ¶ 14, 348 P.3d 415, 420 (Wyo. 2015) ("This Court . . . does not reweigh evidence. Instead, we view the facts in the light most favorable to the prevailing party." (citation omitted)). And though the case on which he relies—*JR v. TLW*, 2016 WY 45, 371 P.3d 570 (Wyo. 2016)—did involve children parroting their mother's religious statements, it involved much more than that factually and the issues on appeal did not require us to consider the religious statements in any meaningful way. That case therefore has little bearing here.

[¶21] Father cannot use W.R.C.P. 52(a) to challenge the district court's order on any and all grounds. If he disagreed with the outcome, he should have separately argued why the district court abused its discretion by awarding Mother primary physical custody, analyzing the evidence under the appropriate standard of review. *See Castellow*, ¶ 7, 492 P.3d at 897 (standard of review); *In re KRA*, ¶¶ 14–16, 85 P.3d at 437 (separately addressing the mother's argument that the district court's Rule 52(a) findings were inadequate and that its decision was contrary to the evidence).

[¶22] Similarly, if Father believed the district court erred by failing to consider new evidence on remand, he should have raised that as a separate issue, addressing whether he made a request to present updated evidence followed by an offer of proof if his request was denied. *Cf. JR*, ¶ 14, 371 P.3d at 576 ("[A] party's failure to offer evidence to the district

9

court results in a waiver of any argument regarding the significance of that evidence on appeal." (citation omitted)); *Guy–Thomas v. Thomas*, 2015 WY 35, ¶ 12, 344 P.3d 782, 786 (Wyo. 2015) ("If Wife had evidence that she wanted to present, her attorney should have offered that evidence, and if she was not allowed to present it, an offer of proof should have been made so that we would know what would have been presented to determine whether an error was made." (citation omitted)). According to Mother, the parties agreed the district court should decide custody on the existing record. Father does not dispute her representation.

[¶23] Finally, as a component of his shared custody argument, Father contends the district court ignored CP's interest in seeing both parents as much as possible, as demonstrated by its failure to include a provision in its order allowing either parent to have telephone/remote visitation with CP when she is in the other parent's custody. He asserts this oversight leaves him with only physical visitation every other weekend and permits Mother to deny him telephone/remote visitation with "no legal recourse."

[¶24] A district court "may order visitation it deems in the best interests of each child and the court shall: (i) Order visitation in enough detail to promote understanding and compliance[.]" Wyo. Stat. Ann. § 20-2-202(a)(i) (LexisNexis 2021); *see also Edwards v. Edwards*, 2020 WY 35, ¶ 20, 459 P.3d 448, 452 (Wyo. 2020) ("The degree of detail must allow for parents to understand their obligations, and for the court to enforce the decree by contempt sanctions when necessary." (citation omitted)). Father does not argue the visitation order violates this standard; address whether the issue is adequately covered by broader provisions on parental cooperation, as Mother suggests; or otherwise establish how the district court abused its discretion with respect to visitation. *Cf. IC v. DW*, 2015 WY 135, ¶¶ 19–22, 360 P.3d 999, 1005–06 (Wyo. 2015) (agreeing with appellant the visitation order was not detailed enough and remanding for development of a more detailed visitation plan). "We 'will not frame the issues for the litigants and will not consider issues not raised by them and not supported by cogent argument and authoritative citation.'" *Statzer v. Statzer*, 2022 WY 117, ¶ 24, — P.3d —, — (Wyo. 2022) (quoting *Ross v. State ex rel. Dep't of Workforce Servs.*, 2022 WY 11, ¶ 24, 503 P.3d 23, 31 (Wyo. 2022)).

## *CONCLUSION*

[¶25] The district court's Rule 52(a) findings are sufficient to inform us why the district court awarded Mother primary physical custody and to examine the legal soundness of its decision. We affirm.

**ROBINSON, District Judge**, dissenting, in which **KAUTZ, Justice**, joins.

[¶26]   I respectfully dissent.  I would find the district court's order did not make special findings of fact sufficient to meet the requirements of W.R.C.P. 52(a)(1)(A).

[¶27]   I recognize, as does the majority, when a party requests written findings of a trial court pursuant to W.R.C.P. 52(a)(1)(A), the court's "findings need not be set forth in elaborate detail but need only be clear, specific and complete in concise language informing the appellate court of the underlying bases for the trial court's decision." *O's Gold Seed Co. v. United Agri-Products Fin. Serv.*, 761 P.3d 673, 676 (quoting *Whitefoot v. Hanover Ins. Co.*, 561 P.2d 717, 720 (Wyo. 1977)).

[¶28]   This Court has not given "specific requirements for Rule 52(a) findings of fact in child custody cases." *Ianelli v. Camino*, 2019 WY 67, ¶ 42, 444 P.3d 61, 71 (Wyo. 2019) (Kautz, J., specially concurring).  Still, in exercising its discretion, a trial court in any child custody and visitation case must determine what is in the best interests of the child and "**shall consider**" the factors given in Wyo. Stat. Ann. § 20-2-201(a) and (c) (emphasis added).

[¶29]   Further, there are non-statutory factors a trial court is required to consider when making a child custody and visitation determination if relevant to the case.  In *Martin v. Hart*, this Court stated, "[w]hile not determinative, primary caregiver status is a weighty factor that the district court **must** consider."  2018 WY 123, ¶ 22, 429 P.3d 56, 64 (Wyo. 2018) (emphasis added) (citing *Bruegman v. Bruegman*, 2018 WY 49, ¶ 41, 417 P.3d 157, 170 (Wyo. 2018); *Williams v. Williams*, 2016 WY 21, ¶ 19, 368 P.3d 539, 546 (Wyo. 2016); *Walter v. Walter*, 2015 WY 53, ¶¶ 10–12, 346 P.3d 961, 965 (Wyo. 2015); *In re Paternity of JWH*, 2011 WY 66, ¶ 11, 252 P.3d 942, 947 (Wyo. 2011)).  "A child's custody preference, though not conclusive, is a factor that should be given serious consideration in determining custody." *JR v. TLW*, 2016 WY 45, ¶ 11, 2016 WY 45, 575 (Wyo. 2016).  The separation of siblings "is not preferred" and is a non-statutory factor that requires a trial court to "provide an explanation of its reasoning and place its findings on the record" if such is ordered. *Aragon v. Aragon*, 2005 WY 5, ¶ 23, 104 P.3d 756, 763 (Wyo. 2005) (quoting *Pace v. Pace*, 2001 WY 43, ¶ 17, 22 P.3d 861, 867 (Wyo. 2001)), *rev'd on other grounds by Bruegman*, *supra*.  In modification of custody and visitation petitions, factors relevant to a parent relocating must be considered if relevant to the case. *Ianelli*, ¶¶ 34–37, 444 P.3d at 70.

[¶30]   The district court's order did not contain explicit factual findings related to each of the statutory factors, nor did it contain explicit factual findings related to non-statutory factors presented and discussed at trial.  Specifically, findings related to four statutory factors can only be inferred or implied from three sentences in the district court's order:

11

> Testimony established that the minor child has a good relationship with both parents, and the Court finds that they have been co-parenting well, less some minor issues.[5]

> . . . .

> Testimony was provided by CP's therapist, Dr. Khanh Tran, which recognized concerns related to shared physical custody. Specifically, that due to the child's age, the two extremely diverse parenting styles, and each parent's inability to work with the other, it would be difficult for the child to transition between the parents.[6]

[¶31]  There is no mention of a geographic distance between the parties, leaving the majority to have to look to the record to determine the parents lived in the same town of Sheridan, Wyoming.  Wyo. Stat. Ann. § 20-2-201(a)(viii).  The district court's order is silent regarding primary caregiver status although this non-statutory factor was discussed in Ms. Castellow's proposed findings of fact and conclusions of law.  The district court's order is also silent regarding the child's preference despite testimony received on this subject by the child's mental health provider, Dr. Tran.

[¶32]  Although not the only basis for reversal, one of the bases for this Court's reversal in *Castellow I*, was the district court "touched on some of the statutory factors, but ignored at least two factors important to the circumstances before it." *Castellow v. Pettengill*, 2021 WY 88, ¶ 15, 492 P.3d 894, 900 (Wyo. 2021) (*Castellow I*).  The two factors stated to be critical but ignored were "[h]ow the parents and child interact and communicate with each other and the ability and willingness of each parent to provide care without intrusion and respect the other parent's rights and responsibilities . . . considering Dr. Tran's testimony and the challenges the parents had been experiencing with joint custody."

[¶33]  The two sentences provided by the trial court on remand, arguably related to these two statutory factors, fail to provide a clear or specific finding by the district court.  They fail to "spell out" the trial court's "reasons as well as [it] can so that counsel" and this Court "will know and be in a position to evaluate the soundness of [its] decision" as required. *Id.*

---

[5] The first part of the first sentence is explicitly applicable to statutory factor§ 20-2-201(a)(i)—"the quality of the relationship each child has with each parent."  The second part of the first sentence may implicitly address factor § 20-2-201(a)(v)—"how the parents and each child can best maintain and strengthen a relationship with each other."

[6] The majority finds the second and third sentence addresses statutory factors § 20-2-201(a)(vi) ("how the parents and each child interact and communicate with each other and how such interaction and communication may be improved"), § 20-2-201(a)(vii) ("the ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy"), and § 20-2-201(a)(x) ("any other factors the Court deems necessary and relevant").

¶ 10, 492 P.3d at 898 (citing *Kimzey v. Kimzey*, 2020 WY 52, ¶ 38 n.2, 461 P.3d 1229, 1241 n.2 (Wyo. 2020)).

[¶34]   This Court gave guidance in *Castellow I*, ¶ 15 n.2, 492 P.3d at 900 n.2, that a trial court should explicitly remark on each statutory factor given in Wyo. Stat. Ann. § 20-2-201(a) when a W.R.C.P. 52(a)(1)(A) request is made:

> We have recognized that when the "evidence supports the district court's decision, the 'failure to explicitly comment on a statutory factor in the district court's opinion letter or order does not necessarily indicate that the court failed to consider that factor.'"  *Shipley v. Smith*, 2020 WY 26, ¶ 13, 458 P.3d 852, 856 (Wyo. 2020) (quoting *Paden v. Paden*, 2017 WY 118, ¶ 12, 403 P.3d 135, 140 (Wyo. 2017)).  We have not applied that leniency to cases in which Rule 52(a)(1)(A) findings were requested, nor do we find that the evidence here supports the district court's decision.

[¶35]   This should be a requirement recognized today.  In a custody and visitation case, a trial court's special findings of fact and separate conclusions of law should explicitly make findings addressing each statutory factor given in Wyo. Stat. Ann. § 20-2-201 and each case-relevant non-statutory factor when a Rule 52(a)(1)(A) request is made.  If a particular factor is not relevant to the case, no evidence has been presented, or is neutral, the district court need only state this; such will still meet Rule 52(a)(1)(A) requirements.

[¶36]   I do not know the reason or reasons the district court awarded primary physical custody to Mother and visitation to Father.  It is possible the district court's conclusion in doing so is sound and I would so conclude, had the district court provided adequate written findings.  Instead, the district court's reason can only be implicitly found.  The majority is left having to presume the district court's reasons when it twice states: "the district court implicitly decided it was in CP's best interest for Mother to have primary physical custody."  An implicit decision by a trial court fails to provide an appellate court a "clear, specific and complete" determination for review under Rule 52(a)(1)(A).

[¶37]   The district court's order would have been sufficient, had a Rule 52(a)(1)(A) request not been made.  A request was made under the rule.  The district court did not in writing make special factual findings of all statutory factors required by Wyo. Stat. Ann. § 20-2-201 and relevant non-statutory factors.  The special findings did not sufficiently inform this Court "of the underlying bases for the trial court's decision."  The failure to do so was an abuse of discretion.  I would reverse and remand.