# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 87

APRIL TERM, A.D. 2024

August 19, 2024

MEGAN E. VASSILOPOULOS,

Appellant
(Plaintiff),

v.

S-24-0010

KYLE S. VASSILOPOULOS,

Appellee
(Defendant).

*Appeal from the District Court of Fremont County*
*The Honorable Jason M. Conder, Judge*

*Representing Appellant:*
Devon P. O'Connell, Crystal D. Stewart, Pence and MacMillan LLC, Laramie, Wyoming.

*Representing Appellee:*
Farrah L. Spencer, Monica J. Vozakis, Long Reimer Winegar LLP, Evanston, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, and GRAY, and FENN, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Justice.**

[¶1]   The district court granted Megan Vassilopoulos (Mother) and Kyle Vassilopoulos (Father) a divorce, assigned primary physical custody and decision-making authority over their minor child to Father, and deviated the parties' presumptive child support amount to zero. In a separate order, the court divided the parties' marital property. Mother appeals each order, challenging the court's custody, child support, and property division decisions. We affirm the district court's custody and property division orders. However, because we conclude the district court abused its discretion when it deviated from the presumptive child support amount without fully explaining its reasons, we reverse and remand the court's child support order.

## *ISSUES*

[¶2]   Mother raises three issues:

1. Whether the district court abused its discretion by awarding Father primary physical custody of the minor child when it failed to make specific findings pursuant to Wyoming law.

2. Whether the district court erred when it improperly calculated child support and improperly deviated presumptive child support downward to zero.

3. Whether the district court abused its discretion when it failed to properly address statutory factors, did not address money owed to Appellant by Appellee, made factual errors, and committed cumulative error by its division of the marital estate.

## *FACTS*

[¶3]   The parties married in September 2016. During the marriage, they had one child, LJV, born in October 2020. In January 2022, Mother filed a complaint for divorce. After hearing from the parties, the district court entered a temporary custody, visitation, and support order. The court found Mother to be the primary caregiver and she should retain primary physical custody of LJV. It granted Father visitation every weekday from 8 a.m. to 5 p.m. while Mother worked and every other weekend from Friday to Monday at 5 p.m. The court also ordered telephone/video visitation for both parents, that all communications between the parents be lawful and peaceful, and that they not interfere with each other's parenting time. The court appointed a guardian ad litem.

1

[¶4]   In May 2023, the district court granted Father's motion to bifurcate the proceedings. It first held a three-day bench trial to determine child custody, visitation, and support. The court ordered joint legal custody, Father primary physical custody and decision-making authority, and "extensive" liberal visitation for Mother. The court stated it had calculated both parties' presumptive child support obligations and determined it would deviate from the presumptive child support amount downward to zero.

[¶5]   In September, the court held a two-day bench trial to determine how to divide the marital property. Father acquired several businesses before and during the marriage. Mother worked at her family's bank throughout. In its written order, the court found both parties had kept their jobs and finances separate and had agreed to do so at Mother's request. The parties also agreed to share expenses. The court awarded Mother the marital home, a payment from Father for her equitable share of Father's businesses, her vehicle and other personal property, bank accounts, and the shares in her family bank. The court ordered Father to pay the remaining mortgage on the marital home and awarded him his various businesses, his personal vehicle, and the personal property in his possession.

[¶6]   Mother timely appealed the custody, child support, and property division orders.

## DISCUSSION

### I.   The district court did not abuse its discretion when it awarded Father primary physical custody of LJV.

[¶7]   We review the district court's custody decision for an abuse of discretion. *Bailey v. Bailey*, 2024 WY 65, ¶ 6, 550 P.3d 537, 542 (Wyo. 2024) (citations omitted). "A court abuses its discretion if it acts in a manner that exceeds the bounds of reason under the circumstances, violates some legal principle, or ignores a material factor deserving significant weight." *Id.* (citing *Hyatt v. Hyatt*, 2023 WY 129, ¶ 48, 540 P.3d 873, 888 (Wyo. 2023)). We consider the evidence presented "in the light most favorable to the district court's decision, 'affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.'" *Ianelli v. Camino*, 2019 WY 67, ¶ 20, 444 P.3d 61, 66 (Wyo. 2019) (quoting *Bishop v. Bishop*, 2017 WY 130, ¶ 9, 404 P.3d 1170, 1173 (Wyo. 2017)). We do not reweigh the evidence. *Id.* (citation omitted).

[¶8]   The child's best interests are paramount considerations when the district court exercises its discretion in fashioning a custody and visitation arrangement. Wyo. Stat. Ann. § 20-2-201(a) (2023) lists the following non-exclusive factors the court must consider:

> (i) The quality of the relationship each child has with each parent;

2

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

*Id.* The court is also required to consider the "weighty" factor of a parent's primary caregiver status. *Bailey*, 2024 WY 65, ¶ 7, 550 P.3d at 543; *Ianelli*, 2019 WY 67, ¶ 32, 444 P.3d at 69 ("[W]hile not determinative, primary caregiver status is a weighty factor that the district court must consider." (citation omitted)). No single factor controls the court's discretion, and it may weigh each factor differently depending on the circumstances of each case. *Bailey*, 2024 WY 65, ¶ 7, 550 P.3d at 543 (citation omitted); *Hyatt*, 2023 WY 129, ¶ 49, 540 P.3d at 888 (citation omitted).

[¶9] Mother argues the district court abused its discretion because (1) it failed to make sufficient factual findings, including a failure to consider her primary caregiver status, and (2) its written findings are unsupported by the record. Because neither Father nor Mother requested specific findings under W.R.C.P. 52, we look only to see whether the record

supports that the district court adequately considered the child's best interests.[1] *Booth v. Booth*, 2019 WY 5, ¶ 22, 432 P.3d 902, 910 (Wyo. 2019) (citation omitted). Here, the court analyzed each statutory factor under Wyo. Stat. Ann. § 20-2-201(a) in its written order and determined it was in LJV's best interests to award Father primary physical custody. The record supports the court's custody decision.

[¶10]   Mother argues her primary caregiver status under the temporary custody order was a material factor the district court overlooked in weighing LJV's best interests. Though the temporary custody order referenced Mother's primary caregiver status, in its final custody order, the court did not explicitly find either parent to be the primary caregiver. The court did, however, consider the evidence as it related to who cared for LJV when it emphasized that Father spent each workday with LJV and had alternating weekend visitations from Friday through Monday. Father testified he had a flexible work schedule that allowed him to work at home and care for LJV. He also testified he actively participated in LJV's daily care before and after the divorce proceedings began. Specifically, he arranged for nannies or babysitters as needed, spent time with LJV during the day while Mother was at work, grocery shopped and prepared food, and attended doctor's appointments. In its final custody order, the court also found Father is more willing to move forward with a healthy co-parenting relationship. Mother's actions, on the other hand, led to a "toxic and tumultuous relationship" that placed LJV in the middle. On this record it is clear the court did not overlook primary caregiver status in its final order as Mother contends. *See Bruegman v. Bruegman*, 2018 WY 49, ¶ 12, 417 P.3d 157, 161 (Wyo. 2018) (citation omitted).

[¶11]   Mother next asserts the court's best interest findings under Wyo. Stat. Ann. § 20-2-201(a)(iv), (v), (vi), and (vii) are not supported by the record. Each of these factors is related to the parties' ability to co-parent. Mother acknowledges this is the main focus of the court's custody decision. On this issue, the court was concerned about Mother's actual willingness to relinquish care of LJV and found that Mother had conditioned relinquishment on her own perception of fairness. As a result, custody exchanges came with conflict and behavior in violation of the temporary custody order which required Mother to peacefully communicate with Father.

[¶12]   The court heard testimony about the conflicts Mother generated during these exchanges with Father. For example, Mother would yell at Father about clothing, make derogatory comments towards Father in front of LJV, and would take toys away from LJV so that LJV would cry and make a loud scene. Because these exchanges occurred outside

---

[1] We have held when a party makes a request pursuant to W.R.C.P. 52(a), "the rule plainly requires the district court to 'state in writing its special findings of fact separately from its conclusions of law[.]'" *Pettengill v. Castellow*, 2022 WY 144, ¶ 11, 520 P.3d 105, 109 (Wyo. 2022) (citation omitted). Absent such request, the court is generally not required to make specific factual findings though we often encourage it to do so. *Kimzey v. Kimzey*, 2020 WY 52, ¶ 38 n.2, 461 P.3d 1229, 1241 n.2 (Wyo. 2020) (citations omitted); *Ianelli*, 2019 WY 67, ¶ 41, 444 P.3d at 71 (Kautz, J., specially concurring) (citations omitted).

the police station, which incidentally was next to one of Father's businesses, his staff would witness what occurred. Mother also avoided relinquishing care of LJV. She limited Father's visitation time in 2022 because she perceived he had failed to give her adequate notice of holiday visitation time. Specifically, Mother did not have custody of LJV on Mother's Day or Labor Day, in part due to Father's alleged lack of adequate notice. Consequently, she limited Father's visitation time on Father's Day and took several vacation days during the last few months of the year so she did not have to relinquish custody of LJV under the temporary custody order. The record also shows Mother frequently argued over the timing and details of telephone/video visitations with LJV. This evidence supports the district court's findings that Mother was controlling, openly hostile, and disdainful towards Father, that the parties' communication was caustic, and that Mother has struggled to allow Father to parent without interruption.

[¶13] Mother's remaining arguments ask this Court to reweigh the evidence presented to the district court and to make custody determinations in her favor. We are not permitted to do so under our standard of review. *Bailey*, 2024 WY 65, ¶ 10, 550 P.3d at 543 (citation omitted). Instead, we must afford Father every favorable inference while omitting consideration of evidence presented by Mother. *See id.* The district court's written order adequately considered LJV's best interests. The record supports the district court's findings and provides a basis from which the court could reasonably conclude it was in LJV's best interests to award Father primary physical custody.

## II.     The district court abused its discretion when it deviated the presumptive child support down to zero without fully setting forth its reasons.

[¶14] We review the district court's child support determinations for an abuse of discretion. *Martin v. Hart*, 2018 WY 123, ¶ 28, 429 P.3d 56, 65 (Wyo. 2018) (citation omitted). "Child support calculations are governed exclusively by statute." *Hyatt*, 2023 WY 129, ¶ 37, 540 P.3d at 886 (citation omitted). To calculate child support, the court must first determine the parties' net monthly incomes. Wyo. Stat. Ann. § 20-2-304(a); *see also* Wyo. Stat. Ann. § 20-2-303(a) (defining "income"). The court then must apply the appropriate statutory formula and set forth the presumptive child support amount in its order. *See* Wyo. Stat. Ann. §§ 20-2-304(a), -307(a).

[¶15] The district court is permitted to "deviate from the presumptive child support . . . upon a specific finding that the application of the presumptive child support would be unjust or inappropriate in that particular case." Wyo. Stat. Ann. § 20-2-307(b). If the court deviates from the presumptive amount, it then must "specifically set forth fully" the reasons for the deviation. *Id.*; *see also Martin*, 2018 WY 123, ¶ 33, 429 P.3d at 66. The statute also identifies several factors the court must consider in determining whether to deviate. Wyo. Stat. Ann. § 20-2-307(b). These factors include: the age of the child, the cost of necessary child day care, the value of services contributed by either parent, the ability of either or both parents to furnish health, dental and vision insurance through employment

5

benefits, the amount of time the child spends with each parent, and any other necessary expenses for the benefit of the child. *Id.*

[¶16]   The district court stated it relied on the parties' confidential financial affidavits to calculate the presumptive child support for basic and "split" custody based on the number of days LJV would be in Mother's custody.[2]   The court did not identify the presumptive child support amount in its order.   Rather, the court determined a deviation from the presumptive amount was appropriate under the specific facts and circumstances of this case.   It stated:

> In making this determination the court specifically finds that based upon the number of days LJV is in his Mother's care, and the Mother's provision of full health insurance benefits for [LJV], it is appropriate to deviate downward from the presumptive basis [*sic*] custody amount.   Furthermore, based upon these same factors, as well as the time LJV will be with [h]is Father, and the value of services provided by the Father in [LJV]'s daily care, the court finds it appropriate to deviate downward from the presumptive split amount.   Therefore, the child support owed by either parent is 0.00$.

[¶17]   Mother argues the district court abused its discretion because it failed to make the required findings to deviate from the presumptive child support amount.[3]   We agree.   The district court failed to make the necessary findings or explain why the presumptive child support would be "unjust or inappropriate."   Wyo. Stat. Ann. § 20-2-307(b).   The court also never provided the presumptive child support amount from which it deviated or indicated whether it started with a basic or shared custody calculation.   We cannot discern from the order or record the full extent of the court's downward deviation.   We can discern the court considered at least three of the statutory factors, but the court failed to explain how each factor individually or collectively warranted a reduction in presumptive child support for both parents to zero.

---

[2] The district court's order repeatedly refers to "split" custody when it likely meant "shared" custody.  Split custody involves situations in which parents have multiple children and "each parent has physical custody of at least one (1) of the children[.]"  Wyo. Stat. Ann. § 20-2-304(d).  Shared custody involves situations in which "each parent keeps the children overnight for more than twenty-five percent (25%) of the year and both parents contribute substantially to the expenses of the children in addition to the payment of child support[.]"  *Id.* § 20-2-304(c).

[3] Mother also argues the district court abused its discretion when it failed to set forth the presumptive child support amount in its order.  Precedent instructs that a court's failure to set forth the presumptive child support amount may constitute an abuse of discretion.  *See Martin*, 2018 WY 123, ¶ 30, 429 P.3d at 66.  However, because the court failed to set forth or explain its reasons for deviating from whatever presumptive amount it calculated as required by statute, we base our reversal on that error.

[¶18]   In considering the statutory factors, the district court first suggested the number of days LJV is with Mother and Mother's provision of health insurance justified the downward deviation.  However, the court made no findings attributing the percentage of time LJV is with Mother versus Father.  It also did not establish that subtracting the cost of Mother's health insurance from the presumptive child support amount equated to zero.  *See also Martin*, 2018 WY 123, ¶ 34, 429 P.3d at 67 (taking issue with the district court's child support deviation, in part, due to the lack of evidence to support a deviation).  The record does not provide any clarity on either point.

[¶19]   The court next suggested the time LJV spends with Father and the value of services provided by Father for LJV's daily care justified the downward deviation of Father's presumptive child support amount.  On this point, the court similarly failed to make any finding (1) attributing the percentage of time LJV is to spend with Father versus Mother or (2) establishing the value of any services Father provides to LJV on a daily basis.  The record likewise does not offer any clarity.  As such, the court's generalized findings failed to "specifically set forth fully in the order" its reasons for deviating from the presumptive child support amount as required under Wyo. Stat. Ann. § 20-2-307(b).  *See also Martin*, 2018 WY 123, ¶ 34, 429 P.3d at 67 (urging "the district court to obtain and consider additional evidence to support any deviation in order to comply with Wyo. Stat. Ann. § 20-2-307(b)'s requirement to 'specifically set forth fully' its reasons for deviation.").  The court therefore abused its discretion when it deviated from the presumptive child support amount.  We must remand for the court to set forth the appropriate presumptive child support amount under the statute (basic or shared) and explain its deviation, if any, based on the evidence in the record.

### III.     The district court did not abuse its discretion when it divided the parties' marital property.

[¶20]   We review the district court's division of marital property for an abuse of discretion.  *Bailey*, 2024 WY 65, ¶ 26, 550 P.3d at 547 (citation omitted).  We focus on whether the court could reasonably conclude as it did.  *Id.*; *Innes v. Innes*, 2021 WY 137, ¶ 16, 500 P.3d 259, 262 (Wyo. 2021) (citation omitted).  "[W]hen a party contests the sufficiency of the evidence, we afford 'the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party.'"  *Bailey*, 2024 WY 65, ¶ 26, 550 P.3d at 547 (citation omitted).  "We will not disturb a property division in a divorce case, except on clear grounds, as the trial court is usually in a better position than the appellate court to judge the parties' needs and the merits of their positions."  *Hyatt*, 2023 WY 129, ¶ 11, 540 P.3d at 880 (citation omitted).  An abuse of discretion will be found if the property division shocks the conscience of this Court and appears to be "so unfair and inequitable that reasonable people cannot abide by it."  *Bailey*, 2024 WY 65, ¶ 26, 550 P.3d at 547 (quoting *Hyatt*, 2023 WY 129, ¶ 11, 540 P.3d at 880).

7

[¶21] Wyo. Stat. Ann. § 20-2-114(a) governs the disposition of property in a divorce:

> [I]n granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and their children.

The district court has discretion to determine the weight of each statutory factor when making a property division. *Innes*, 2021 WY 137, ¶ 15, 500 P.3d at 262 (citation omitted). The statute does not require an equal division of property and a "just and equitable" division is likely to be unequal. *Bailey*, 2024 WY 65, ¶ 27, 550 P.3d at 547 (citation omitted). "The equity of a district court's property division is evaluated 'from the perspective of the overall distribution rather than from a narrow focus on the effects of any particular disposition.'" *Hyatt*, 2023 WY 129, ¶ 16, 540 P.3d at 881 (citation omitted).

[¶22] Mother challenges several aspects of the district court's property division order, generally asserting the court abused its discretion when it failed to expressly address the statutory factors under Wyo. Stat. Ann. § 20-2-114(a) and made a property division unsupported by the record. As noted above, Mother did not make a W.R.C.P. 52 request for specific findings of fact. Thus, the court was only required to have "regard" for the statutory factors when it divided the property rather than expressly consider each factor. Wyo. Stat. Ann. § 20-2-114(a). Our case law also does not mandate any "hard and fast rules" governing how the district court analyzes these factors. *See Stoker v. Stoker*, 2005 WY 39, ¶ 22, 109 P.3d 59, 65 (Wyo. 2005) (quoting *Paul v. Paul*, 616 P.2d 707, 712 (Wyo. 1980)). The property division order clearly demonstrates the district court had regard for the statutory factors and made an equitable division of property supported by the record.

[¶23] The district court expressly addressed the merits of the parties. In weighing the merits, the court is required to consider "each party's role in, and contributions to, the marriage and the property." *Johnson v. Johnson*, 2020 WY 18, ¶ 23, 458 P.3d 27, 36 (Wyo. 2020) (citation omitted). It found the parties had been married for a short time and during that time they maintained separate finances and separate jobs, though they shared the expenses. It also found the parties had little or no positive impact on the economic success of the other. During the trial, both parties testified to keeping their finances separate and sharing expenses. Mother also acknowledged that the success of Father's businesses was due in large part to Father.

[¶24] The court found Mother worked at her family's bank before and after the marriage. It also found the value of Mother's involvement with the bank was "shrouded in mystery." It stated Father had no impact on Mother's income or banking assets. It also noted Father's

8

income was much higher than Mother's and he had more disposable income to spend on the marital home, including the bulk of the down payment, a remodel, and various upgrades. The parties' confidential financial affidavits support the substantial difference in their incomes. Mother's testimony also showed the parties disputed the value of Mother's interest in her family bank and were not able to testify to an approximate value.

[¶25] In considering the party through whom the martial property was acquired, the court found Father acquired the bulk of his most profitable businesses prior to the marriage, including Kitchen Sinks, Inc., Coalter Group, LLC, and Western Elevations. During the marriage, Father acquired Rustworks, LLC, Rusty Real Estate, and Eatery 223, along with the real estate for each business. The court acknowledged Mother provided some encouragement, support, and minimal assistance toward Father's businesses. However, it stated most of her conduct regarding the businesses was either ambivalence or animosity, and she had no interest in running Father's businesses. Father's testimony at trial supports these findings. He testified Mother was not especially supportive of his businesses and discussed examples of Mother telling him he should not pursue various business opportunities. Mother testified she felt her and Father potentially could have remained married but for Father's businesses.

[¶26] The court's property distribution demonstrates that it considered the remaining statutory factors. The court awarded Mother the martial home along with her personal property, bank accounts, retirement account, and health savings account, reflecting the court's consideration of the condition in which party will be left by divorce. The court awarded Father his several businesses but also ordered Father to pay the remaining mortgage on the marital home and an additional $140,000 over four years to reflect Mother's equitable share in Father's businesses. This disposition demonstrates the court considered the burdens imposed upon the property for the benefit of either party and their child.

[¶27] Mother also argues the district court abused its discretion because its property division failed to address her request to reallocate responsibility for guardian ad litem fees and award her other money Father allegedly owes her. Mother overlooks that we review the equity of the district court's division of property "from the perspective of the overall distribution rather than from a narrow focus on the effects of any particular disposition." *Hyatt*, 2023 WY 129, ¶ 16, 540 P.3d at 881 (citation omitted). Additionally, her arguments are cursory and essentially ask us to reweigh the evidence and disagree with the district court's discussion on these issues. Under our standard of review, we are not a liberty to do so. *See Bailey*, 2024 WY 65, ¶ 10, 550 P.3d at 543 (citation omitted).

[¶28] Lastly, Mother appears to argue the district court abused its discretion when it bifurcated the divorce proceedings under W.R.C.P 42(b),[4] and she contends the court arbitrarily misrepresented the duration of the marriage when it granted the divorce. Mother fails to cite any legal authority or provide cogent analysis to support this summary argument. We therefore decline to consider it. *McInerney v. Kramer*, 2023 WY 108, ¶ 14, 537 P.3d 1146, 1150 (Wyo. 2023) (explaining that this Court does not address arguments unsupported by cogent argument or authority).[5]

[¶29] Because the evidence presented by Father, and all the reasonable inferences drawn from that evidence, supports the district court's findings, and because the district court adequately considered the statutory factors under Wyo. Stat. Ann. § 20-2-114(a) and did not divide the property in a manner "so unfair and inequitable that reasonable people cannot abide by it," the court did not abuse of its discretion in its division of the parties' property. *Bailey*, 2024 WY 65, ¶ 26, 550 P.3d at 547 (citation omitted).

## *CONCLUSION*

[¶30] The district court did not abuse its discretion when it granted primary physical custody of LJV to Father and equitably divided the marital property. The court did abuse its discretion when it deviated from the presumptive child support amount without "specifically setting forth fully in the order" its reasons for doing so. We therefore affirm the child custody and property divisions orders, and reverse and remand the district court's child support order for additional findings based on the evidence in the record.

---

[4] W.R.C.P. 42(b) states, in part: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."

[5] Mother also contends the district court committed cumulative error in its division of property. We do not need to address this argument because Mother failed to demonstrate the district court committed any error in its property division order.